## GARRETT *et al. v.* COWART *et al.*

1. The court did not err in overruling a motion to dismiss the information in the nature of a quo warranto, based on the ground that such a proceeding must be brought by a public officer in the name of the State on the relation of private persons. An information in the nature of a writ of quo warranto may be legally instituted by a citizen and taxpayer, or a defeated candidate, in his own name without the intervention of the State through one of its public officers.

2. The court did not err in overruling the demurrers to the petition, based on the ground that no cause of action was set out, and that the facts did not show that respondents are ineligible to hold the offices, the title to which it was sought to inquire into by the writ in the nature of a writ of quo warranto. Other grounds of the demurrer were expressly abandoned. The court did not err in rendering a judgment of ouster against the respondents, based upon the agreed statement of facts, notwithstanding certificates of election had been issued to the respondents and they had taken the oath of office and assumed the duties thereof.

No. 1385. NOVEMBER 20, 1919.

Quo warranto. Before Judge Harrell. Calhoun superior court. March 4, 1919.

*B. W. Fortson,* for plaintiffs in error.

*J. M. Cowart* and *L. M. Rambo,* contra.

GILBERT, J. J. S. Cowart et al, applied for and obtained leave to file, on behalf of themselves and all others similarly situated, an information in the nature of quo warranto, in order to inquire into the right of B. M. Garrett to the office of mayor of the Town of Arlington, and into the right of C. P. Gleaton and R. A. Rogers to

hold the offices of aldermen of said municipality. The petition alleged, that the respondents were not eligible to hold the offices under the laws of this State, fixing the qualifications for holding said offices; that under the charter of said municipality it is provided that no person shall be eligible to any office in the Town of Arlington who is not eligible as a voter, and that the qualifications of voters, as declared by said charter, are "such as are required for electors for the General Assembly," etc., and one of the qualifications of voters for members of the General Assembly is the payment of all taxes which may have been required of him since the adoption of the constitution of 1877 that he has had an opportunity of paying agreeably to law; and that respondents had not complied with the above requirement as to the payment of taxes. The petition was not filed through any public officer of the State, nor was the State made a party thereto. At the hearing the respondents presented a motion to strike and dismiss the information filed against them, because the same was "not brought by the proper officer in said court, to wit, the solicitor-general in the name of the State of Georgia at the relation of the above-named relators, as required by the 4th section of the statute of 9 Anne, ch. 20, which statute is of force in Georgia and the law of Georgia." The motion was overruled. Respondents demurred to the petition generally and specially, all of which demurrers were overruled. The respondents filed an answer in which they denied the material facts upon which a judgment of ouster was prayed. The issues were submitted to the court on an agreed statement of facts, as follows: "An election was held in the Town of Arlington on the first Tuesday in January, 1919 (January 7th, 1919), the regular time under the charter of said town for holding the election, for the election of a mayor and five aldermen for the year 1919, the term of office of the then incumbents expiring on that day. At this election there were two candidates for mayor and ten candidates for aldermen. The revised registration list of voters prepared by the registrars of said town for said election and by them furnished to the superintendents of said election contained the names of 102 persons who had registered to vote in said election; that is the names of 102 citizens of said town who had registered to vote at said election and whose names had been by the registrars of said town, after revising the list of citizens who had registered to vote at said

election, placed on the revised list to be used by the superintendents of said election in said election. Among the names on said revised list of registered voters so furnished said superintendents by said registrars to be used for said election were those of B. M. Garrett, C. P. Gleaton, and R. A. Rogers, respondents in this case. The names of J. S. Cowart and E. R. McKinney, relators, were also on said revised list. The name of W. W. Calhoun, the other relator, was not on said revised list, nor did he register to vote at said election. All three of the relators were actively engaged, on the day of election, in trying to encompass the defeat of respondents by soliciting voters to vote for opposing candidates. The manner of holding the election was in all respects according to law. There were 94 votes cast for mayor, B. M. Garrett receiving 59 of them. There were likewise 94 votes polled for aldermen, and among the five successful candidates were C. P. Gleaton and R. A. Rogers, who each received 57 votes. All of the successful candidates, including B. M. Garrett, C. P. Gleaton, and R. A. Rogers, were declared elected by the superintendents of said election, and certificates of election were duly issued to each of them by said superintendents, and all of them took the required oath of office, and on the follow-ing day, January 8th, 1919, assumed and entered upon the duties of their respective offices. B. M. Garrett is a resident of Early County, that is, he boards in Early County. He did not make any tax returns for 1918 in Early County. He has been a resident of Early County, in the manner just stated, for 10 or 12 years. He has never made any tax returns in Early County, but has paid a poll tax for each of said years to the tax-collector of Early County on January 10, 1919, two days after he had entered upon the dis-charge of his duties as mayor of said town under the election afore-said. Neither at the time of his election nor before nor since that time had any tax fi. fa. been issued against him for said poll tax, nor was his name on any tax defaulter's list or record of tax defaulters of any kind in Early County, nor had he been classed by the tax-collector as a tax defaulter. All other taxes save said poll tax had been paid by him prior to said election. C. P. Gleaton and R. A. Rogers had not paid their State and county taxes for 1918 prior to said election, nor prior to their induction into their offices after said election, and there were at the time tax fi. fas. outstanding against each of them for their 1918 State and county

taxes; but each has, since the filing of this proceeding, paid the same and said fi. fas. are now fully settled and satisfied. The respondents B. M. Garrett, C. P. Gleaton, and R. A. Rogers were each duly registered and legally entitled to vote for members of the General Assembly in the last election therefor on the Tuesday after the first Monday in November, 1918. The eligibility of none of the respondents as a registered and qualified voter for said election was questioned by the relators or by any one else before the registrars when they were revising the list of citizens who had registered for said election. There were no complaints filed with the registrars against any of the respondents, nor was the right of any one of them to vote, in said election challenged by the relators or by any one else at and during said election. The registrars did not question the right of respondents to vote in said election when revising the registration list. At the aforesaid election a great number of those voting had not paid all their 1918 taxes, State, county, and municipal. Two of the relators had not paid all their 1918 taxes. Some of the opposing and defeated candidates had not paid their 1918 taxes. The registrars placed their names on the revised list, and no one challenged their right to vote at the polls."

The court rendered judgment holding the respondents ineligible, under the charter of the Town of Arlington, to hold the offices to which they had been declared elected. The respondents excepted.

1. The court did not err in overruling the motion to dismiss the proceedings. "In this State there is no statute specifically prescribing the procedure in a quo warranto proceeding or an information in the nature thereof." *Milton* v. *Mitchell*, 139 *Ga.* 614, 616 (77 S. E. 821). Section 5451 of the Civil Code declares: "The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging, but must be granted at the suit of some person either claiming the office or interested therein." The code provides that the same procedure shall obtain for quo warranto and information in the nature of a writ of quo warranto. Civil Code, § 5454. The ancient common-law writ of quo warranto was a writ of right by the king or the crown, and issued, as of course, at the instance of the attorney-general, and was, strictly speaking, a civil remedy. The information in the nature of a quo warranto originally par-

took of the character of a criminal proceeding, but has long since lost its character as such. Under the common law the attorney-general, acting for the crown, was not required to obtain the leave of the court in order to file quo warranto against persons who were usurping public offices, but had the right quite independently to so act in behalf of the public. 22 R. C. L. 699.; State *v.* Kent, 96 Minn. 255 (104 N. W. 948, 1 L. R. A. (N. S.) 826, 6 Ann. Cas. 905, 907, 913, notes) ; People *v.* Union Consolidated R. Co., 263 Ill. 32, 33 (105 N. E. 12, Ann. Cases 1915C, 388, 392, notes). The plaintiffs in error base their motion to dismiss particularly upon the language of the statute of 9 Anne, c. 20, § 4. This reads in part as follows: "In case any person or persons shall usurp, intrude into, or unlawfully hold and execute any of the said offices or franchises, it shall and may be lawful to and for the proper officer in each of the said respective courts, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of a quo warranto, at the relation of any person or persons desiring to sue or prosecute the same, and who shall be mentioned in such information or informations to be the relator or relators against such person or persons so usurping, intruding into, or unlawfully holding and executing any of the said offices or franchises, and to proceed therein in such manner as is usual in cases of information in the nature of a quo warranto." Schley's Digest, 346. This statute was passed in 1710, more than two hundred years ago, since which time the rules of procedure have been modified. It is worth while, however, to point out that this statute does not in terms provide that the institution of proceedings must necessarily be by an officer when the suit is in behalf of an interested party, such as a defeated candidate. Under the statute of Anne proceedings at the instance of private relators are recognized, and a requirement of leave of court made incident to their initiation. A defeated candidate has such an interest as will entitle him to institute such a proceeding. *Davis* v. *City Council of Dawson,* 90 *Ga.* 817 (2), 820 (17 S. E. 110) ; *Crovatt* v. *Mason,* 101 *Ga.* 246 (28 S. E. 891). Proceedings in this State and elsewhere have been lacking in uniformity, partly because of statutory enactments and partly because of varying constructions placed by the courts upon the common law and statutes of England and to what extent these were operative in their respective jurisdictions. In the same

character of cases, that is, to test the right of persons to hold municipal offices, the proceedings have not been uniform in this State. Some have been instituted by the State through public officers on the relation of individuals, while others have been instituted by individuals without the intervention of any public officer of the State. Even when instituted by public officers, in some instances such officers have applied for and obtained leave of the court to file the information in the nature of quo warranto. The precise question involved in the motion to dismiss, that is, that this proceeding must proceed on behalf of the State through a public officer, has never been decided by this court. In *Churchill* v. *Walker,* 68 *Ga.* 681, the information was filed by the solicitor-general of the Eastern Judicial Circuit for the State on the relation of certain parties, to try the title to municipal offices. On demurrer the writ was dismissed, and the case was brought to this court on exceptions assigning error on the judgment of dismissal. The State was not served with the bill of exceptions, so as to make it a party in this court. On the hearing here a motion was made to dismiss the writ of error, because the State was not a party to the same. This court ruled that as the information was filed by the solicitor-general and for the State, "and could be filed in no other name but that of the State, we cannot see that the State was not a necessary party here;" but it was said, "as we think it best to dispose of the case on the merits, we will pass upon the other points." The court then proceeded to pass upon and decide the other issues made in the bill of exceptions. It will be observed that on the motion to dismiss the bill of exceptions there was but one point involved, and that was, since the petition had been filed by the solicitor-general for the State, the State was a necessary party. This court held that to be the law. It did not hold, however, that if the petition had not been filed by an officer of the State the petition would have been demurrable on that account. There was a demurrer to the petition, but it was not based upon this ground. The expression that the petition "could be filed in no other name but that of the State" was not necessary to the decision of the motion to dismiss the writ of error. The fact that almost uniformly subsequently to this time such proceedings have been instituted in the name of private individuals and not by public officers, and have been allowed to proceed to final judgment without

question, affords the strongest reason for the belief that the legal profession, the trial judges, and this court have treated that expression as obiter and not in accord with the prevailing weight of authority. The modern practice has been to dispense with the useless form of bringing such a suit in the same of the State by a public officer. It would conserve no useful purpose to retrace these steps if we could consistently do so. For all of these reasons we are convinced that the court did not err in overruling the motion of the respondents to dismiss the proceedings.

2. The court did not err in overruling the demurrers nor in rendering judgment of ouster against respondents. It is insisted that in order to be a qualified voter of Arlington it is only necessary to pay all taxes due to that municipality. This contention is based on the language of the oath that may be required, under the charter, of those seeking to vote, viz., that they "have paid all taxes legally required of you [them] by said Town of Arlington." Acts 1890-1891 vol. 2, p. 869. Such a construction would be altogether too narrow and unreasonable. The Town of Arlington is a subdivision of the State. Citizens of Arlington are bound, in duty as well as by the law of the land, to bear their respective portions of the burdens of State and county taxation. The charter of the Town of Arlington contains the following provisions in regard to the qualifications of those holding offices of said municipality: "No person shall be eligible to any office under this act who is not eligible as a voter at the election aforesaid." Acts 1890-1891 vol. 2, p. 868. Section 3 of said act provides that "the qualification of voters at said election shall be such as are required for electors for the General Assembly," etc. When the General Assembly, in the charter of Arlington, fixed the qualifications of voters in that town by requiring them to be such as are required for electors for the General Assembly, the obvious meaning is that they must perform all of the duties required of electors for the General Assembly. It is a prerequisite to the right of voting for members of the General Assembly that the citizen "shall have paid all taxes which may have been required of him since the adoption of the constitution of Georgia of 1877, that he may have had an opportunity of paying agreeably to law. Such payment must have been made at least six months prior to the election at which he offers to vote, except when such elections are held within six months from

the expiration of the time fixed by law for the payment of such taxes." The words "legally required," employed in the charter of Arlington, have reference to all taxes, State, county, and municipal; for the General Assembly must have assumed that the Town of Arlington would require of its citizens the payment of State and county taxes, as well as those due to the municipality. We cannot impute to the General Assembly an intention either to relieve the citizens of Arlington of the payment of taxes due the State and county, or to relax the high standard of duties required of citizens in its municipalities generally when it came to deal with the Town of Arlington. There is no merit in the contention that a taxpayer is not made ineligible until he is on the list of defaulters or until an execution is issued against him. It is his duty to pay all taxes due by him that he has had an opportunity to pay. The execution is merely a means of forcing him to perform a duty which he should do voluntarily. In applying these principles in cases involving the right to hold public office the citizen should be held to a rigid performance of every obligation. The contrary would serve as an excuse or moral justification on the part of citizens generally to delay the payment of taxes until forced to pay. Removing ineligibility after entering upon the official duties will not suffice to comply with the statute. 22 R. C. L. 403. The fact that the voters' names appear on the registration list is not the conclusive test of their qualifications to vote. "Registration adds no qualification to voters, but only serves to identify them as persons qualified to vote." *Mayor &c. of Madison* v. *Wade,* 88 *Ga.* 699 (3) (16 S. E. 21); *Davis* v. *Dawson,* supra. The fact that certificates of election were issued to the respondents and the oath of office taken by them cannot in any way prevent an inquiry into their title to the office.

There was an attempt to raise other issues by assignment of error in the bill of exceptions; but these issues were not made in the trial court, and therefore cannot be considered by this court.

*Judgment affirmed. All the Justices concur, except George, J., absent.*