## JONES *et al. v.* DARBY.

No. 8474. DECEMBER 16, 1931. REHEARING DENIED JANUARY 16, 1932.

*Saffold, Sharpe & Saffold,* for plaintiffs.
*B. P. Jackson* and *G. W. Lankford,* for defendant.

HINES, J.   Jones and others, as citizens and taxpayers of Toombs County, filed their information in the nature of a quo warranto, to inquire into the right of Darby to hold the office of commissioner of roads and revenues of Toombs County.   Darby was elected as such commissioner on November 4, 1930.   The board of county commissioners of said county was created by the act of August 29, 1929. Ga. Laws 1929, p. 725.   By the first section of this act the commissioners of roads and revenues for said county "shall be qualified voters of said county."   Petitioners in their information alleged. that Darby was ineligible to hold this office, for the reason that he had not paid his taxes due to the City of Vidalia for the year 1929, prior to the date of his election.   Upon the hearing of this application counsel for petitioners and respondent agreed that the only question for determination by the court was whether Darby's failure to pay his taxes to the City of Vidalia rendered him ineligible to

**72**

hold said office. The court rendered judgment holding that Darby was qualified to hold this office, and the petitioners excepted. The court based its judgment upon the proposition that Darby was a legal voter, notwithstanding his failure to pay said municipal taxes, and that he was not disqualified from holding the above office under art. 2, sec. 1, par. 3, of the constitution of this State, embodied in section 6397 of the Civil Code of this State. This makes it necessary to construe this paragraph, which provides, among other things, that to entitle a person to register and vote at any election by the people he "shall have paid all taxes which may have been required of him since the adoption of the constitution" of 1877. The specific question for decision is, do "all taxes," as used in this section, embrace municipal taxes? This provision of the constitution is very broad. It makes the payment of "all taxes" by a person a condition precedent "to register and vote at any election by the people."

What taxes does the language "all taxes" embrace? In construing statutes their ordinary signification shall be applied to all words, except in certain defined cases. Civil Code (1910), § 4. The same rule of construction is applicable to constitutional provisions. In the main, the general principles governing the construction of statutes apply also to the construction of the constitution. The words and terms of a constitution, like those of a statute, are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates, or the text suggests, that they have been used in a technical sense. The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them. 10 C. J. 705, § 48 (b). In construing the language "all taxes," as used in this provision of the constitution, we are to give to it its most natural and obvious meaning. It deals with taxes. It deals with all taxes. It is not confined to one class of taxes. Its obvious meaning is that it embraces taxes of every kind imposed upon persons in this State. Giving this language its natural and obvious meaning, it embraces State, county, and municipal taxes; and we must give to the language this meaning, unless there is something which indicates a different meaning. There is nothing in this provision to restrict the meaning of this language, or to require a construction which limits it to the payment of State and county taxes, or to the pay-

ment of one or the other of these taxes. Furthermore, this natural and obvious meaning of the words is based upon sound reasoning. Taxes are the lifeblood of the State. This is the declaration of the constitution of Georgia. Civil Code (1910), § 6462.

A municipal corporation is a public corporation, having for its object the administration of the powers of government delegated by the legislature to it for that purpose. Civil Code (1910), § 2190. It is a political subdivision of the State. Such a corporation can not exist without taxes to support it. Taxes are as indispensable to its existence and to the exercise of its functions as they are to the State or to a county. They are as much the lifeblood of a municipality as they are of the State or a county. This being so, the framers of this provision of the constitution could well insert therein the provision that those who seek the honor and emoluments of State, county, or municipal offices should pay all taxes due to the State, counties, or municipalities. So when the framers of this provision of the constitution inserted therein the provision that in order to entitle a person to register and vote he must pay all taxes, they clearly meant State, county, and municipal taxes. The framers of his provision of the constitution evidently meant to impose upon those who aspire to public office and its emoluments, whether in the State, counties, or municipalities, the burden of discharging the important duty of paying all taxes in favor of the State and its political subdivisions due by them. This was one of the means of imposing upon such aspirants the payment of these taxes.

Besides, it has been the legislative practice in this State to place these three classes of taxes upon the same or a similar footing. So the legislature has established liens in favor of the State, counties, and municipal corporations for taxes. Civil Code (1910), § 3329. The legislature has further provided that these liens for taxes shall cover the property of taxpayers liable for taxes from the time fixed by law for the valuation of the same in each year until such taxes are paid; and these liens are declared to be superior to all other liens, giving to the State first rank in the payment of taxes due to it, to the counties second rank in the payment of taxes due to them, and to municipalities third rank in the payment of taxes due to them. Civil Code (1910), § 3333. As the legislature has deemed the collection of taxes due the State, counties, and municipalities of such importance as to give them priority over all other liens, we

can well understand why the framers of this provision of the constitution should make the payment of these taxes a prerequisite to register and vote, and to declare as a qualification for holding office that a person should pay all taxes due the State, counties, and municipalities. This provision embraces all taxes required of the voter since the adoption of the constitution of 1877. In *Garrett* v. *Cowart,* 149 *Ga.* 557, 564 (101 S. E. 186), this court held that the words "legally required," as employed in the charter of Arlington, had reference to all taxes, State, county and municipal. See *Malone* v. *Minchew,* 170 *Ga.* 687 (153 S. E. 773). If it had been the intention of the framers of this provision of the constitution to limit this requirement to the payment of taxes due the State alone, or to taxes due the State and county alone, this purpose could have been easily accomplished by embracing this limitation in this provision.

But it is contended that the constitution of this State deals with the qualification of voters, and defines who are entitled to register and vote, in art. 2, sec. 1, pars. 1, 2, and 3, which are now embodied in the Code, §§ 6395, 6396, 6397. It is said that these provisions of the constitution are repeated in sections 34 and 35 of the Civil Code, and that immediately following those sections are chapter 2 and sections of the Code dealing with the "registration of voters." It is insisted that all of these statutes establish the general registration and election laws of his State, and are to be construed together in determining the qualifications of voters. It is further urged that a part of the general election laws of the State is a provision in the Code that the tax-collector shall open the voters' books, and the time during which they shall be opened. Civil Code (1910), § 36. It is further urged that as a part of the general election laws the Code provides when the voters' book is to be closed. § 38. It is further urged that the act of 1913 (Ga. L. 1913, p. 115), now embraced in sections 47(a) et seq. of Park's Code, requires tax-collectors to keep a permanent qualification book, to make up the registration list by putting thereon the names of such electors as appear on such qualification book, who have duly paid all taxes due and required of them at least six months prior to the election for which the registration list is made up; that the electors who are qualified and have signed the permanent qualification book shall not thereafter be required to register or further qualify, ex-

75

cept as may be required by the registrars; that the tax-collector shall furnish to the registrars the list of all persons that he registers for each year, who shall proceed as provided by law to determine whether the list furnished contains the names of all voters qualified and entitled to vote at such election. It is further urged that the tax-collector, the ordinary, and the clerk of the superior court of each county shall, before April 20th of each year, prepare and file with the county registrars a complete list, alphabetically arranged, of all persons living in the county on April 10 of each year, who appear to be disqualified from voting by reason of non-payment of taxes since 1877, or by reason of idiocy, insanity, or conviction of crime working disfranchisement, and that said list of qualified persons shall consist only of such persons whose names do not appear on the list last prepared by said officers. Civil Code (1910), § 49. It is further urged that in preparing said list of disqualified persons, these officers shall act upon the best evidence obtainable by them, and that they shall specially examine and consider the records of the criminal courts of the county, the insolvent-tax list, tax-digests, tax-execution dockets, and tax executions wherever they may be. § 50. It is contended by counsel for the county commissioner that these provisions of law do not require the above officers and the registrars to go to every municipality in the county and obtain information as to the non-payment of taxes due the municipality; and that if the legislature had intended to place that duty on these officers, they could have easily said so. The conclusion is therefore drawn from these provisions of the registration law that it was not the purpose of this provision of the constitution to require the payment of municipal taxes as a prerequisite of the right to register and vote. The learned judge of the trial court took this view; and he based the same on the above provisions of the law which provide for a board of registrars for each county, which impose on the tax-collector the duty to furnish to said board a list of the registered voters, which make it the duty of that officer, the ordinary, and the clerk of the superior court to furnish to the registrars the disqualified list; and in view of the officers designated to furnish the above information to the registrars, and taking into consideration these circumstances, the trial judge reached the conclusion that the provision in the constitution with which we are dealing embraces only taxes due the State and county, and not municipal taxes.

While there is some plausibility in the above view, we do not think that the facts upon which this view is based are sufficient to authorize the deduction that we should not give to the language of the provision of the constitution with which we are dealing its plain, obvious, and natural meaning. We should certainly not do this from anything in our statutes providing for the registration of voters. Our registration laws do not deal with the qualification of voters. They can add nothing to such qualification. They can take nothing therefrom. Registration adds no new qualification. It serves only to identify the persons who are qualified to vote. *Mayor &c. of Madison* v. *Wade,* 88 *Ga.* 699 (3) (16 S. E. 21); *Davis* v. *Dawson,* 90 *Ga.* 817 (2) (17 S. E. 110); *Garrell* v. *Cowart,* supra. If the provision of our statute requiring the officers to prepare the list of persons. disqualified to vote had required them to examine only such records as were kept in their respective offices in preparing such list, the deduction drawn by counsel for the respondent and then by the trial judge would have been stronger. On the contrary they are required, in preparing said list, to "act upon the best evidence obtainable by them, and they shall especially examine and consider all records of the criminal courts of the county, the insolvent-tax lists, tax-digests, . . tax-execution dockets, and tax executions, *wherever they may be.*" Civil Code (1910), § 50. Under this statute these officers, in determining the list of persons disqualified to vote, could easily examine the tax-digest, the tax-execution dockets, and tax executions issued by the municipalities of their respective counties. The municipalities in any given county are not so numerous as to impose a very onerous burden upon these officers in their effort to ascertain the voters disqualified therein.

So we reach the conclusion that in order to qualify a person in this State to register and vote in any election, including those held for State and county officers, he must have paid his municipal taxes, and that a person so in default as to payment of these taxes is not qualified to hold the office of county commissioner. So we feel constrained to reverse the judgment of the trial judge.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

### ON MOTION FOR REHEARING.

HINES, J. The defendant in error makes a motion for a rehear-

ing on the ground that this court overlooked the fact that there was absolutely no evidence in the record in this case to show that the 1929 taxes due by respondent to the City of Vidalia were due as much as six months prior to his election to the office of county commissioner. The bill of exceptions in this case recites that it is conceded by counsel for both sides that the sole question to be determined by the trial court was whether or not failure to pay municipal taxes to the City of Vidalia more than six months next preceding the general election at which respondent was elected rendered him ineligible to hold the office. Clearly this stipulation makes it absolutely certain that the taxes due by respondent to the city were due and payable more than six months preceding the general election at which he was elected. This position is fortified by the fact that in the brief filed by counsel for the respondent no such question was raised or discussed when this case was submitted to this court. Besides this stipulation and concession, it abundantly appears from the facts appearing in this record that the city taxes were due and payable more than six months prior to the election at which respondent was elected to the office of county commissioner. The taxes were for the year 1929. The election took place in November, 1930. By the 63rd section of the charter of Vidalia the mayor and council thereof are granted "power and authority to levy and collect a tax annually, of not exceeding one and one half per cent., upon all and every species of property, both real and personal, within the limits of the City of Vidalia, including bonds, notes, debts, choses in action, moneys employed in banking and otherwise, and to enforce the collection of same by execution, levy and sale as the mayor and council shall provide." Acts 1922, pp. 1004, 1044. So the tax which this city was authorized to levy and collect in 1929 had to be collected annually; and it is to be presumed, in the absence of anything to the contrary appearing in the record, that the mayor and council of the city had provided the time at which such tax became due and collectible. Furthermore, the contention that a tax levied for 1929 was not to be collected until the succeeding year would amount to an absurdity. So under the facts appearing in this record the city taxes of the respondent were due and payable ten months or more prior to the election at which he was chosen county commissioner. Instead of this court

overlooking this fact in the record, counsel for the respondent themselves have overlooked this important fact in the record. The motion for rehearing is denied.