HARRIS *et al. v.* McMILLAN *et al.*

MAY *v.* HARRIS *et al.*

Nos. 12446, 12447.   JULY 15, 1938.
REHEARING DENIED JULY 21, 1938.

*Lawton & Cunningham, Anderson, Cann & Dunn, Hitch, Denmark & Lovett,* and *Abrahams, Bouhan, Atkinson & Lawrence,* for plaintiffs.

*Edward A. Dutton, O'Neal & O'Neal, A. L. Alexander,* and *Shelby Myrick,* for defendants.

GRICE, Justice. It is contended by counsel for the defendants that the decisions of this court in *Tatum* v. *Langley,* 179 *Ga.* 731 (177 S. E. 243), and *Lilly* v. *Miller,* 181 *Ga.* 624 (183 S. E. 790), require a different conclusion from the one at which we have arrived. The contention is that those two decisions ruled that paragraphs 2 and 3 of section 1 of article 2 of the constitution apply to municipal electors and municipal elections, and are all-inclusive of the qualifications of voters in such elections; and therefore that the General Assembly was impotent to impose any additional qualifications on persons seeking to vote in municipal elections. Those two paragraphs read as follows: (2) "Every . . citizen of this State who is a citizen of the United States, twenty-one years old or upwards, not laboring under any of the disabilities named in this article, and possessing the qualifications provided by it, shall be an elector and entitled to register and vote at any election by the people." (3) "To entitle a person to register and vote at any election by the people, he shall have resided in the State one year next preceding the election, and in the county in which he offers to vote six months next preceding the election, and shall have paid all poll taxes that he may have had an opportunity of paying agreeably to law." In *Jones* v. *Darby,* 174 *Ga.* 71 (161 S. E. 835), it was held that one who had failed to pay taxes due by him to a municipality, the same having become due and payable six months before the election, was ineligible to hold an office in the *county* in which the municipality was located. The only question was whether the language "all taxes," in art. 2, sec. 1, par. 3, of the constitution, should be held to include municipal taxes. In *Tatum* v. *Langley,* supra, it was held that one who had not paid a street-tax in accordance with an *ordinance of the municipality* requiring payment of such tax as a prerequisite to voting in a municipal election was nevertheless entitled to vote in such election, he having paid his poll-tax as required by the constitution. No other question was presented, and the decision must be construed accordingly.

In *Lilly* v. *Miller,* supra, it was held that one who had not paid his poll-tax due to the State six months before a municipal election was ineligible as an elector or voter in such municipal election. In that decision it was stated that the requirement of article 2, section 1, paragraph 3, of the constitution applies to municipalities. In view of what has been said, this statement can be taken as authority only as to the single question presented; and the same is true as to the other decisions referred to in this connection. These decisions all refer exclusively to the matter of payment of taxes as a condition of eligibility to vote at any election by the people, including municipal elections, and do not deal with other grounds of qualification. They hold nothing contrary to the power of the legislature to prescribe additional grounds of qualification for voters in municipal elections, not inconsistent with those stated in the constitution; and we do not think that the constitutional provisions here invoked should be construed as preventing the General Assembly from prescribing the additional grounds of qualification specified in the municipal charter here under consideration. Rulings to the effect that these provisions are applicable to municipalities do not mean that additional requirements may not be also applied to them by the General Assembly. While the decision in *McMahon* v. *Savannah, 66 Ga.* 217 (42 Am. R. 65), dealt with city laws requiring the registration of voters at municipal elections, and it was held that the same did not add new qualifications to the voters, but were regulations, Speer, Justice, in delivering the opinion, observed that "It might be gravely questioned whether the framers of the constitution intended to apply the qualifications therein prescribed to those who vote in municipal elections." In that opinion it was also said: "If it is not competent for the legislature to provide *regulations* for the conduct and management of municipal elections—*requiring the electors to be clothed with the constitutional qualifications*—then there would be an end of all municipal government, for every qualified voter of the county could vote at the municipal election. If registration is a new qualification, as is contended for, so would *residence* in the corporate limits be, and each be violative of the constitution. To surrender the municipal governments of the State to the consequences of such a construction of our constitution would be effectively to destroy them."

If the view were adopted that the constitution, in the two paragraphs above quoted, intended to prescribe who should and who should not possess all the qualifications of a voter in a municipality, and that the General Assembly could not add any others, the following would be the result: In any county wherein were located two or any number of municipalities, a resident of one could vote in elections in all the others. A long-time resident of the City of Reynolds, for instance, could vote in the municipal elections of the City of Butler, for both are in this State, and both are in Taylor County. If the qualifications laid down in the constitution for voters were all-inclusive as applied to municipal elections, a resident of Reynolds could by registering and paying poll tax meet every requirement; for he had resided in the State one year, in the county six months next preceding the election, and had paid all poll-taxes. If the words "at any election held by the people" cover municipal elections, and if the General Assembly can not add any other qualifications, why can not the resident of Reynolds vote in Butler's municipal elections, and vice versa? It seems to us that the argument of counsel leads us to just that. While the illustration just given may be in a measure similar to that presented by this case, in that persons residing without the limits of the Town of Tybee are permitted to vote therein, be it remembered that we are discussing in this connection what would result if the constitution should be construed as being all-exclusive in fixing the right to vote in municipal elections. What we mean to say is, that the constitution does not compel the General Assembly to permit a situation such as that just supposed. Neither does it prevent the legislature from allowing non-residents of a municipal corporation owning realty therein to become voters in such municipal elections therein, when they are residents of the county and possessed of the other qualifications described by the constitution.

If the constitution in the paragraphs herein quoted has laid down the exclusive qualifications for voters "at any election by the people," and if this includes municipal elections, then the legislature can not require that before a citizen, who is otherwise qualified to vote, can cast his ballot in a municipal election in the City of Atlanta, he must reside in Atlanta. Every legislature that has met since the adoption of the constitution has granted

charters to villages, towns, and cities, and almost without exception they have, when fixing the eligibility of voters, required that they be residents of the incorporated area. If *residence* in the town or city may be required, then it is competent for the legislature to say how long a residence must be had. If it can provide that residence for a certain length of time must be had before one is eligible to vote in municipal elections, then why may it not impose any other requirement as to the eligibility, provided the requirement does not run counter to some constitutional provision, State or Federal, such, for instance, as the fifteenth or nineteenth amendments to the Federal constitution?

There is no requirement in our constitution that there be uniformity in the charters of our municipalities. It was perhaps thought that certain communities need charters differing in marked respects from others, and that the lawmakers should be left free to give to each town and city a separate act of incorporation. In so far as the powers and restrictions contained therein run counter to no constitutional provision, and no general law, they are valid.

The legislature had the power, in granting this charter, to permit persons residing without the municipality but owning real estate therein, but residing in the County of Chatham, to vote and hold office in such municipality, if otherwise qualified under the constitution. *State* v. *Swearingen,* supra; *Beazley* v. *Lunceford,* 178 *Ga.* 683 (173 S. E. 852); *Peacock* v. *Larsen,* 180 *Ga.* 444 (178 S. E. 922). The case of *Avery* v. *Bower,* 170 *Ga.* 202, 209 (152 S. E. 239), referred only to a county election, and therefore is distinguishable. The registry laws relating to general county elections do not apply to municipal elections. *Floyd County* v. *State,* 112 *Ga.* 794, 798 (38 S. E. 37); *Slate* v. *Blue Ridge,* 113 *Ga.* 646 (2) (38 S. E. 977); *Goolsby* v. *Stephens,* 155 *Ga.* 529, 538 (117 S. E. 439). Courts can exercise no legislative powers. In answer to the suggestion that it is undemocratic to refuse the ballot in municipal elections in Savannah Beach to those who own therein no land, we can only say 'that such suggestion should be addressed to the General Assembly, not to the judicial branch of the government. The principle of the separation of powers embodied in our bill of rights (Constitution, art. 1, sec. 1, par. 23; Code, § 2-123), "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person dis-

charging the duties of one shall, at the same time, exercise the functions of either of the others, except as herein provided," was characterized by an eminent magistrate as "the chief glory and distinguishing excellence of the free institutions under which it is our happiness to live." *Wilder* v. *Lumpkin*, 4 *Ga.* 208, 211. It is our function to declare the law as it is; not what we might think it should be. Since the constitution can not be construed as prescribing all of the qualifications of a voter in a municipal election, and since there is no general law covering the subject, the courts have no right to refuse to give effect to the voice of the people's representatives as expressed in the act under attack.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except*

RUSSELL, C. J., who dissents from the judgment on the main bill of exceptions.

ON MOTION FOR REHEARING.

In headnote 8 of the opinion first rendered we ruled that that portion of paragraph 13 of the petition which stated that the forty-eight persons who offered to vote would have voted for the old board of councilmen if they had been permitted to vote was not demurrable on the ground that it stated a conclusion. On a re-examination of the record, it was discovered that plaintiff in error in the cross-bill did not assign error upon the overruling of the demurrer as to this matter. The ruling has therefore been stricken from the opinion as originally rendered, for the reason that this court should rule only on such assignments of error as are presented by the complaining party. The motion for a rehearing merely emphasizes and enlarges upon the contentions urged upon the original hearing, all of which were carefully considered by the court. We have again considered all of these questions, but find no sufficient reason for changing our opinion. We deem it unnecessary to add to what has heretofore been said thereon.