Johnny G. SPAHOS, Emory C. Bobo, T. R. Cole, Alexander P. Solomon, III, Labon F. Hodges, H. H. O'Brien, Henry H. Glisson, Robert T. Beeland, B. Taylor Smith, Regal B. Concepcion, T. S. Chu, E. H. Smart, Joe Hawkins, C. H. Cobb, William D. Smith and Milledge C. Jones

v.

The MAYOR AND COUNCILMEN OF the TOWN OF SAVANNAH BEACH, TYBEE ISLAND, GEORGIA, a Municipal corporation, Henry M. Buckley, Clerk of Council, J. A. Brown, Mayor, William S. Lovell, Alex Meddin, John A. Peters, Benno P. Hosti, James H. Powers and Robert L. Waters, Councilmen, and William C. Fleetwood, Councilman Elect, and Charles M. Debele, E. A. Leonard and Dr. William Weichselbaum, Jr., Board of Registrars of Chatham County, Georgia.

No. 1331.

United States District Court
S. D. Georgia,
Savannah Division.
July 24, 1962.

A. A. Lawrence, Bouhan, Lawrence, Williams, Levy & McAlpin, Anton F. Solms, Jr., Savannah, Ga., for Mayor & Councilmen of Town of Savannah Beach, Georgia.

Aaron Kravitch, Savannah, Ga., for plaintiffs.

Dennis Pierce, Savannah, Ga., for William C. Fleetwood.

John W. Sognier, Savannah, Ga., for the Voting Registrars.

Before BELL, Circuit Judge, and SCARLETT and ELLIOTT, District Judges.

BELL, Circuit Judge.

Plaintiffs are residents of Chatham County, Georgia, and all save two are residents of Savannah Beach, Georgia, a municipality therein. They claim violation of their civil rights as afforded them under the equal protection clause of the Fourteenth Amendment, and rely on Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, for jurisdiction, justiciability and standing to sue.

This is the last of four suits filed in Georgia shortly after the decision of the Supreme Court in Baker v. Carr.[1] The District Court for the Northern District of Georgia struck the statutory county unit system of primary elections in the form in which it then existed. Sanders v. Gray, N.D.Ga.1962, 203 F.Supp. 158. Next, in Toombs v. Fortson, N.D.Ga., 1962, 205 F.Supp. 248, the statutory basis for the election of state senators by rotation among the counties in the various senatorial districts was stricken, and it was held that at least one house of the General Assembly of Georgia must be apportioned to population to avoid that degree of discrimination prohibited by the equal protection clause of the Fourteenth Amendment. And in Wesberry v. Vandiver, N.D.Ga.1962, 206 F.Supp. 276, a complaint seeking relief from malapportioned congressional districts was dismissed for want of equity.

Here we are asked to lay our hand on the affairs of this municipality to the extent of striking certain state statutes permitting non-resident real property owners of the municipality who reside in Chatham County to vote in the elections of the municipality along with residents who may or may not own real property, and providing that three of the town councilmen shall be elected from that class of voters who reside in Chatham County outside the corporate limits of the municipality.[2] Ga.Laws, 1922, p. 987; 1937, p. 2161; 1939, p. 1366; and 1949, p. 271.

The present mayor and councilmen were elected on the 2nd day of April, 1962, to take office on July 2, 1962 and we are asked to declare that election null and void, and to purge the list of voters to the end that the names of all persons not residents of and domiciled within the corporate limits of Savannah Beach be stricken therefrom. Temporary and permanent injunctive relief is sought against the defendants who are the mayor, councilmen, clerk of council, councilman-elect and members of the Board of Registrars of Chatham County in their official capacities.

Jurisdiction and three-judge court status is based on Title 28 U.S.C.A. §§ 1343, 2201, 2202, 2281 and 42 U.S.C.A. § 1983. Baker v. Carr, supra, as we now understand it, resolved the issue of standing to sue, jurisdiction and justiciability where a question such as that here is presented.

The case came on for trial after the pleadings were closed and on stipulated

---

1. Decision in each case by Three-Judge Statutory District Courts.

2. The mayor and the other three councilmen must be residents of the municipality.

facts and affidavits.[3] The issues were narrowed to the alleged deprivation of rights under the equal protection clause of the Fourteenth Amendment, and the cause is not infected by questions based on race, creed or color.

Savannah Beach is a resort town, situated on the Atlantic coast some eighteen miles from the City of Savannah, Georgia, and within Chatham County. According to the 1960 census it had a population of 1,385. It has a summer population of approximately 2,500 additional persons. The property in the town has a tax valuation of $4,414,298 and of this $2,852,040 is returned by non-resident property owners. As of December 26, 1961 there were 549 persons registered to vote as permanent residents, and 443 as non-residents by reason of owning property there. A substantial majority of these resided at Savannah Beach for period of one to four months during the summer months.

It was chartered as Ocean City, Georgia by the General Assembly of Georgia on October 15, 1887. Ga.Laws, 1887, p. 558. The charter restricted the franchise to citizens of Georgia owning any portion of land in the town, and who possessed other stated qualifications. The name was changed from Ocean City to "Town of Tybee" in 1888, Ga.Laws, 1888, p. 271, and in 1929 to the present name, Savannah Beach, Tybee Island, Georgia. Ga.Laws, 1929, p. 1366. The charter was revised in 1922 and the franchise was restricted to residents of Chatham County, rather than of the entire state, who owned a lot or parcel of land within the municipality. Any person was eligible to serve as mayor or councilman if qualified to vote. Ga.Laws, 1922, p. 987.

The charter was again revised in 1937 to provide that no person would be qualified for election as mayor or councilman unless he had been a bona fide resident of the town for a period of at least one month during the year immediately preceding the election, and no person elected as mayor or alderman would be qualified to hold the office who was not, during his term of office, a bona fide resident of the municipality for a period of one month during the first nine months of each calendar year of service. Ga.Laws, 1937, p. 2161.

The Supreme Court of Georgia in Harris v. McMillan, 1938, 186 Ga. 529, 198 S.E. 250, and Sharpley v. Fitzgerald, 1938, 186 Ga. 536, 198 S.E. 255, upheld the charter provision restricting the franchise to property owners and permitting non-resident property owners to vote, as being within the legislative power. One of the seven justices dissented on the ground that restricting the franchise to property owners violated the inherent right of Georgia citizens to vote.

The charter was amended in 1939, eliminating the property ownership prerequisite as to residents of the municipality but continuing it as to the class of voters who were residents of Chatham County but non-residents of Savannah Beach. Ga.Laws, 1939, p. 1366. This revision also provided that three of the six councilmen were to be residents and three non-residents. The mayor could be from either class.

The charter was amended in 1947 to provide that only residents of Savannah Beach would be entitled to vote and the mayor and councilmen were, of course, required to be qualified voters. Ga.Laws, 1947, p. 593. This Act was declared unconstitutional in the case of Bergman v. Dutton, 1948, 203 Ga. 672, 48 S.E.2d 101, because it was not advertised as required under the Georgia laws, thus leaving the Act of 1939 in effect. The 1939 Act was amended in 1949 to provide that no person would be permitted to qualify as a candidate for mayor who had not been a bona fide resident and domiciliary of the town for a period of at least twelve

3. The facts in this memorandum opinion are to be considered as findings of fact within the meaning of Rule 52(a), Fed. R.Civ.P., 28 U.S.C.A. Cf. Myles v. Quinn Menhaden Fisheries, Inc., 5 Cir., 1962, 302 F.2d 146.

months before qualifying, and who was not a registered and qualified voter of the town as provided by law. Ga.Laws, 1949, p. 271. The age requirement to vote was reduced from twenty one to eighteen. This Act and even an era ended on the following note:

"Section VII. Be it further enacted by authority of the same that it is the intention and the purpose of this Act that the various classes of voters and all persons concerned will view this Act with a spirit of tolerance and finally become convinced that, taking all factions, cliques and classes into utmost consideration, the results obtained herefrom shall be fair and equitable and that this Act will restore peace and harmony."

There were no further revisions of the charter in respect to the franchise or qualifications of city officials to hold office, nor was there any further litigation until Bobo v. Mayor and Councilmen of the Town of Savannah Beach, 1960, 216 Ga. 12, 114 S.E.2d 374 where the Supreme Court of Georgia in affirming dismissal by the lower court in an unanimous opinion reiterated the following part of Harris v. McMillan:

"There is no requirement in our constitution that there be uniformity in the charters of our municipalities * * *. In so far as the powers and restrictions contained therein run counter to no constitutional provision, and no general law, they are valid. The legislature had the power, in granting this charter, to permit persons residing without the municipality but owning real estate therein, but residing in the county of Chatham to vote and hold office in such municipality, if otherwise qualified under the constitution."

and went on to hold:

"There is also no merit in the contention that the provision in Tybee's charter which permits such non-resident persons to thus participate in the management of its municipal affairs offends the equal protection clauses of the Federal Constitution (Code, Ann., § 1–815) Amend. 14, § 1 and the Constitution of this State (Code, Ann. § 2–103), Art. 1, § 1, par. 3 on the ground that it dilutes the voting power of those who actually reside within the municipality and is therefore discriminatory class legislation. 'It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied.' Baugh v. City of LaGrange, 161 Ga. 80(2a), c, 130 S.E. 69; City of Valdosta v. Harris, 156 Ga. 490(4), 119 S.E. 625."

The Supreme Court of the United States dismissed the appeal of the plaintiff there, who is one of the plaintiffs here, from the decision of the Georgia court for want of a substantial federal question. Bobo v. Mayor & Councilmen of Savannah Beach, Ga., 364 U.S. 409, 81 S.Ct. 181, 5 L.Ed.2d 185 (1960).

We need not concern ourselves with the question of this decision being *res judicata* on the present questions nor with the doctrine of *stare decisis*. Cf. Baker v. Carr, supra, the rationale of which indicates that the previous dismissal for want of a substantial federal question could have been based on lack of justiciability, a doctrine we take now to have been dissipated, if not disavowed, by the court as it regards political questions of the type under consideration.

This is for the reason that the case of plaintiffs is fatally deficient in two other respects. First, the "strangle hold" situation present in Baker v. Carr, which we view as the *sine qua non* of that decision is not present here. The plaintiffs there had been unable through the course of many years to obtain what the Tennessee Constitution guaranteed them. No state constitutional guaranty against such non-resident voters is present here.

■■ Plaintiffs assert rights under, and discrimination proscribed by, the equal protection clause of the Fourteenth

Amendment to the Federal Constitution. Political rights, such as the right to vote, are protected by the equal protection clause. Baker v. Carr, supra; Sanders v. Gray, supra. But discrimination must reach the point of invidiousness to become actionable, and here the discrimination, if there is discrimination on the theory of allowing non-residents to vote in the municipality along with residents, when such is not done in other municipalities within Chatham County or within Georgia, is not invidious if there is a reasonable chance that political relief can be obtained.[4] The legislative history heretofore set out amply demonstrates that there is. In fact, complete relief was obtained under the 1947 Act. Furthermore, there is no proof that the assistance of the mayor and council who could intercede with the Chatham County legislative delegation, has been sought. There is no "strangle hold" here within the meaning of Baker v. Carr.

Furthermore, we find a lack of arbitrariness in the charter provisions as they relate to the franchise, and to eligibility to hold office, and there is no contention of irrationality. Cf. Sanders v. Gray, supra, and Toombs v. Fortson, supra.

Admittedly the desired end may be obtained in less time through the judicial process but the courts are not empowered to grant dispensations normally forthcoming through the legislative process. Courts can only do the minimal necessary to accord constitutional rights where they are being withheld, and then only on clear proof that they may not be otherwise obtained.

■ The other controlling deficiency is the right of the State to make the classification here, residents on the one hand and non-resident property owners on the other. The rules by which this state action must be tested are settled. Lindsley v. Natural Carbonic Gas Company, 1911, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369. The classification must have some reasonable basis and does not fail because it in practice results in some inequality. If any state of facts reasonably can be conceived that will sustain it, the existence of that state of facts must be assumed. And those who assail the classification must carry the burden that it does not rest upon any reasonable basis, but it is essentially arbitrary. In McGowan v. State of Maryland, 1960, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed. 393 the Supreme Court stated the rule as follows:

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

■ The objective of the legislature here was undoubtedly to permit those persons owning property within the municipality, many of whom were summer residents therein, to have a voice in the management of its affairs. This appears to be a rational objective and the plaintiffs have failed to show that the classification thereunder is arbitrary or unreasonable.

The cause of plaintiffs is wanting in equity. It should be and is hereby DISMISSED.

4. No plaintiff is a property owner residing outside Chatham County and no question of denial of equal protection to such persons is before the court.