James W. DORSEY, Dan I. MacIntyre, III and James Edward Manget, Plaintiffs,

v.

Ben W. FORTSON, Jr., as Secretary of State of Georgia, Eugene Gunby, Ordinary of Fulton County, and Katherine E. Mann, Ordinary of DeKalb County, Defendants.

Civ. A. No. 8756.

United States District Court
N. D. Georgia,
Atlanta Division.

March 27, 1964.

William C. O'Kelley, chief counsel, Atlanta, Ga., Ed Barham, Valdosta, Ga., Charles A. Moye, Jr., and Edwin F. Hunt, Atlanta, Ga., for plaintiffs.

Eugene Cook, Atty. Gen., Paul Rodgers, Asst. Atty. Gen., Atlanta, Ga., for Ben W. Fortson, Jr.

Northcutt & Edwards, Atlanta, Ga., for Eugene Gunby.

George P. Dillard, Herbert O. Edwards and Robert E. Mozley, Decatur, Ga., for Katherine E. Mann.

Before BELL, Circuit Judge, and HOOPER and MORGAN, District Judges.

## PER CURIAM.

Plaintiffs, respectively, a registered voter from the 40th Senatorial District of Georgia, located in Fulton County; the State Senator who is also a registered voter from the same district; and a registered voter from the 42th Senatorial District of Georgia, located in DeKalb County, seek relief, both declaratory and injunctive, from the force of the Georgia statute which requires countywide voting in the selection of state senators in counties having plural senatorial districts. Ga.Laws, Extraordinary Session, September–October, 1962, p. 7 et seq., § 9. The defendants are the election officials, respectively, for the State of Georgia, Fulton and DeKalb Counties.

The complaint is premised on a claim of violation of rights afforded under the equal protection clause of the Fourteenth Amendment. This rests on alleged discriminatory treatment of plaintiffs in the debasement of their right to vote for a senator from their own district in that they must join with voters from other districts in the selection process, while voters residing in counties forming, either in whole or part, single senatorial districts are accorded the right to select their senators on a district-wide basis. They assert, for themselves and those in the same class, that the statutory effect is to place the selection of the senator from any district in a plural district county in the hands of voters other than those residing in the district.

The constitutionality of a state statute being involved in the context of a substantial question, a Three-Judge District Court was convened pursuant to 28 U.S.C.A. § 2281. Gray v. Sanders, 1963, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821. At the outset we hold that the court has jurisdiction, plaintiffs have standing to sue, and that a justiciable issue is presented. 28 U.S.C.A. §§ 1343 (3), 2201, and 2202; Baker v. Carr, 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Gray v. Sanders, supra; Wesberry v. Sanders, 84 S.Ct. 526, and Toombs v. Fortson, N.D.Ga., 1962, 205 F.Supp. 248.

Plaintiffs as well as defendant Fortson have filed motions for summary judgment and we proceed to a consideration of the merits of those motions. While no findings of fact are necessary in the determination of such motions, Hindes v. United States, 5 Cir., 1964, 326 F.2d 150, there is no dispute as to the facts, and they may be briefly stated as follows. We begin with the decision of this court in Toombs v. Fortson, supra, holding the General Assembly of Georgia to be malapportioned, and requiring that either the Senate or House of Representatives be apportioned on the basis of population so as to meet minimal constitutional standards of legislative apportionment.

The General Assembly thereafter convened and reapportioned the Senate on the basis of population. The then existing fifty four senatorial districts

were reconstituted with the result that they ranged in population from 52,572 to 95,032. Some districts were located together with others in one county; others were made up of one whole county; while the remainder were comprised of two or more counties. For example, seven senatorial districts were located in Fulton County, three each in DeKalb and Chatham Counties, and two in each of the Counties of Bibb, Cobb, Muscogee and Richmond. The 12th Senatorial District is composed of Dougherty County alone, while the 52nd is composed only of Floyd County. The remainder may be described as plural county districts. The remaining districts are composed of from two to seven counties.

The apportionment of the House of Representatives was not changed. Its apportionment, as the court noted in Toombs v. Fortson, is based largely on geography, with representatives from the one hundred and three less populous counties of the state making a constitutional majority of the two hundred and five members of the House. At the same time, they represent only twenty two and one half percent of the population of the state. It was also noted that the eight most populous counties, although containing forty one percent of the population of the state, elect only twenty four of the two hundred and five representatives, or a little less than twelve percent of the total number. Each county has at least one representative while no county can have more than three.

The statute reapportioning the Senate, supra, in § 9 thereof, provides as follows:

"Each Senator must be a resident of his own Senatorial District and shall be elected by the voters of his own District, except that the Senators from those Senatorial Districts consisting of less than one county shall be elected by all voters of the county in which such Senatorial District is located."

██ It was the intent of the General Assembly as expressed in § 12 of this statute that the Senate be apportioned on population and the House on geography. At the same extraordinary session an amendment to the Constitution was proposed to provide that the Senate should consist of fifty four members and that the General Assembly should have authority to create, rearrange and change senatorial districts and to provide for the election of senators from each senatorial district or from several districts embraced within one county. This proposal was adopted by the people of Georgia in the general election of 1962, and by the people of all counties having plural districts save Bibb.

It is that portion of the quoted provision relating to elections in districts consisting of less than one county that plaintiffs seek to have declared unconstitutional as conflicting with the equal protection clause of the Fourteenth Amendment.[1]

They buttress their contention of invidious discrimination on the proposition that the essence of representative government is the selection of the representative by those whom he represents, citing Toombs v. Fortson, supra. They state that the representatives elected in the plural district counties are not elected by those whom they represent since voters so situated do not have the opportunity of choosing their own senator, but must join with others to choose a group of senators. They assert, without contradiction, on the basis of the population of the various districts in Fulton County that only eighteen percent of the voters

1. Shortly after the enactment of this statute, and prior to the special election of senators under it, litigation ensued in the state court with respect to its constitutionality under the state constitution. That suit, which affected only those senatorial districts lying within the counties of Fulton and DeKalb, resulted in a decree requiring that the elections be held on a district wide basis only, and this was the case. However, the senators from the districts lying within the other counties having plural districts were elected on a countywide basis. This was prior to the amendment to the state constitution.

in the other six districts of that county could nullify the unanimous choice of the voters in the 34th Senatorial District and thrust a representative upon voters of that district for whom no one at all within the district had voted. Of course, this is carried to an extreme but it cannot be disputed that the selection of a senator from these districts is not within the control and province of the voters of the separate districts. By way of contrast, this is not the case with voters residing in districts not situated in plural district counties.

The Secretary of State urges that countywide voting is a rational and permissive classification in the interest of county government.[2] He points to the fact that plaintiffs have a political remedy and have not availed themselves of it even though one of the plaintiffs is a member of the State Senate. It is argued that there has been no dilution or debasement of the votes of plaintiffs since the whole of the fractional parts, i. e., their being able to vote for more than one senator, is equal to the vote of one residing in a district where he votes for one senator only.

■■ We hold that the complaint is meritorious. There is no genuine issue as to any material fact and it appears that plaintiffs are entitled to judgment as a matter of law. Accordingly, the motion of plaintiffs for summary judgment will be granted, and that of the defendant Secretary of State denied.

The statute causes a clear difference in the treatment accorded voters in each of the two classes of senatorial districts. It is the same law applied differently to different persons. The voters select their own senator in one class of districts. In the other they do not. They must join with others in selecting a group of senators and their own choice of a senator may be nullified by what voters in other districts of the group desire. This difference is a discrimination as between voters in the two classes. The question is whether the discrimination reaches the point of being invidious for that is the type of discrimination that is proscribed by the Fourteenth Amendment. The Supreme Court in Gray v. Sanders, supra, in discussing the Georgia County Unit System where the state was divided into election units varying in population, with the result that voters, as between units, were treated differently to the extent that the votes of some were diluted, pointed out that the system violated the equal protection clause of the Fourteenth Amendment and said:

"* * * there is no indication in the Constitution that homesite * * affords a permissible basis for distinguishing between qualified voters within the State."

We think the rationale of that case is applicable here by analogy. The unit system applied in statewide races and brought about a dilution of votes on the basis of homesite through the use of units. Here the dilution or debasement is of the right of some to choose their representative. It is discrimination in another form, but we think it necessarily follows that voters in some senatorial districts cannot be treated differently from voters in other senatorial districts. The statute here is nothing more than a classification of voters in senatorial districts on the basis of homesite, to the end that some are allowed to select their representatives while others are not. It is an invidious discrimination tested by any standard. Cf. tests laid down by this court in Toombs v. Fortson, supra, and Sanders v. Gray, N.D.Ga., 1962, 203 F.Supp. 158. We agree that the essence of representative government is the choosing of a representative by those he represents. See memorandum opinion in Toombs v. Fortson, unpublished, dated September 5, 1962. And this principle must be applied in an evenhanded manner. Its application may not be with-

2. Defendants Gunby and Mann did not join in the motion for summary judgment. They appeared at the hearing on the motions, through counsel, and did not dispute the facts, nor did they contest the position of the Secretary of State and plaintiffs that the case was ripe for summary judgment.

held from some while at the same time being afforded others, once a political system such as a division of the state into senatorial districts is adopted.

It is contended that the character of the discrimination can be justified on the basis that harmony between senators is required so that the county in which they reside may be better represented. This is said to be a reasonable classification. See McGowan v. State of Maryland, 1960, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, on the subject of permissible classifications by states. The answer to this is that the Senate is to represent population and not geography. That was the intent of the General Assembly in reapportioning. Protecting the interest of counties may be a high motive but it cannot be done at the expense of the voters of the populous counties as is the case here.

■ With respect to the fact that plaintiffs have not sought to use their available political remedy, our attention is called to the case of Spahos v. Mayor and Councilmen of the Town of Savannah Beach, S.D.Ga., 1962, 207 F.Supp. 688, affirmed, 1962, 371 U.S. 206, 83 S.Ct. 304, 9 L.Ed.2d 269. There the court in testing for invidiousness did determine that plaintiffs had a political remedy available as distinguished from the stranglehold situation present in Baker v. Carr, supra, but there was another overriding consideration in dismissing the complaint. That was that the classification of voters being attacked was found to have a reasonable basis. This is not the case here. Moreover, the teaching of Wesberry v. Sanders, supra, decided thereafter by the Supreme Court, is that available political remedies, as was the case with both state and federal legislative remedies available, is not a bar or even a deterrent to an adjudication or declaration of constitutional rights. It may be the subject of consideration in the determination of the relief to be thereafter accorded, but not in the declaration of rights.

■ In sum, the Senate was apportioned to population. The state through the statute in question and the medium of constitutional amendment, divided the state into population districts. Having done so, and the circumstances as they relate to voters residing in each being the same; they are entitled to equal treatment. For these reasons, we hold that portion of the statute in question here, to-wit, the requirement "that the Senators from those Senatorial Districts consisting of less than one county shall be elected by all voters of the county in which such Senatorial District is located" to be unconstitutional on the basis of being violative of the equal protection clause of the Fourteenth Amendment. It is therefore null and void. This will leave that portion of the statute in force which provides that each senator shall be elected by the voters of the district of which he is a resident.

■ The injunctive relief sought is denied. There is no indication that defendants will not follow the law as declared. In fact, plaintiffs stated in open court that this was the case and that they believed injunctive relief to be unnecessary in the event the court voided the statute. These respected and responsible officials are simply caught up in the ferment of change stemming from the recent concept of applying federal constitutional standards to the political process through the use of the judicial process. Baker v. Carr, supra, and its progeny. We think that a declaration of rights under the circumstances, with the attendant striking of the infected portion of the statute, will suffice.

Plaintiffs may submit an appropriate order after due notice to counsel for defendants.