Lonnie CREEL, Jr., et al.,
Plaintiffs-Appellants,

v.

Frank E. FREEMAN et al., Defendants,

Walker County Board of Education, etc.,
et al., Defendants-Appellees.

No. 74–4105.

United States Court of Appeals,
Fifth Circuit.

May 10, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 12, 1976.

W. E. Still, Birmingham, Ala., for plaintiffs-appellants.

Phillip A. Laird, Jasper, Ala., for Walker City Bd. of Ed.

T. K. Selman, Jasper, Ala., for Bd. of Supervisors of Walker City.

Herman W. Maddox, Jasper, Ala., for Robert Cunningham.

Donald B. Sweeney, Jr., Birmingham, Ala., for Jefferson County Board of Education.

Before BROWN, Chief Judge, THORNBERRY, Circuit Judge, and MILLER,* Associate Judge.

MILLER, Associate Judge:

Appellants are residents of Walker County, Alabama, who live outside the city limits

* Of the United States Court of Customs and Patent Appeals, sitting by designation.

of Jasper and Carbon Hill, which are located in the county. They challenge the constitutionality of Alabama statutes[1] under which residents of Jasper and Carbon Hill, who vote for officials, who, in turn, appoint the members of their respective independent city school boards (Ala.Code, tit. 52, § 152 (recompilation 1958)), also vote for some of the five members of the county board of education, which has jurisdiction outside the city limits of Jasper and Carbon Hill, and for the county superintendent of education. It is alleged that this system allows "persons with no substantial interest in the county school board to vote in its elections," thus "diluting" the votes of the noncity residents of Walker County. Appellants seek, among other things, to void and enjoin enforcement of the Alabama statutes insofar as these permit residents of Jasper and Carbon Hill to vote for members of the county board of education and the county superintendent of education, and to enjoin certification of the results of any election in which such city residents have voted for such officials. This appeal is from a summary judgment granted by the district court on motions of appellees, Frank Freeman and other members of the Walker County Board of Education, the members of the Board of Supervisors of Elections of Walker County, and Robert Cunningham, Walker County Superintendent of Education. We affirm.

1. *Ala.Code,* tit. 52, § 63 (recompilation 1958) provides in part:

   § 63. Members.—The county board of education shall be composed of five members, who shall be elected by the qualified electors of the county.

   Act No. 138 of the Special Session of the Alabama Legislature of 1965 (Acts of Ala., Vol. 1) provides in part as follows:

   Section 1. The general supervision and control of the public schools of Walker County shall be vested in a county board of education, which shall consist of a chairman and four associate members.

   Section 2. The chairman of the board shall be a resident and qualified voter of any district or beat in the county . . . . He shall be nominated and elected by the qualified voters of the entire county . . . .

   Section 3. One member of the board shall be a resident and qualified elector of each of

## FACTS

The City of Jasper is located in district one, and the City of Carbon Hill is located in district two. No Jasper or Carbon Hill residents vote in districts three or four. In the June 1974 primary election (tantamount to final election), a total of 2,357 votes was cast in district two for county board member—755 from Carbon Hill and 1,602 from outside Carbon Hill. In the May 1972 countywide primary election for chairman of the county board, a total of 13,500 votes was cast—4,161 from Jasper and Carbon Hill and 9,339 from the rest of the county. Appellants do not allege that Carbon Hill or Jasper voters dominate the elections in their respective county school districts, much less the countywide elections. Indeed, none of the incumbent board members lives in Jasper or Carbon Hill.[2]

The building which houses the offices of the Walker County Board of Education and its workshop and textbook center is located within the city limits of Jasper. The Jasper school board paid $100,000 for the purchase of the property and rents it to the county board for $1 a year.

The Walker Area Vocational School, which is also located within the city limits of Jasper, is operated by and under the exclusive control of the county board. However, the Jasper school board contributed $212,500 towards its construction. In

the four districts from which members of the county governing body are elected. . . .

One member of the board shall be nominated and elected by qualified electors of district one; one member shall be nominated and elected by the qualified electors of district two; one member shall be nominated and elected by the qualified electors of district three; and one member shall be nominated and elected by the qualified electors of district four.

Act No. 86 of the Alabama Legislature of 1935 (Local Acts of Ala.) provides for countywide election of the Walker County Superintendent of Education.

2. The incumbent county superintendent of education resides within the city limits of Jasper. In the May 1974 primary election for this office, a total of 15,889 votes was cast—4,929 from Jasper and Carbon Hill and 10,960 from outside the two cities.

1974 the vocational school had 691 students of which 114 lived inside the city. A charge of $50 is made for each city student in attendance, and the Jasper school board pays it.

Within the city limits of Jasper is Walker High, a senior high school, which in 1974 had an enrollment of 950 students. Of these, 488 lived outside the city limits and 257 were transported to the school by the county board.

In 1974, the Carbon Hill school system had 965 students of which 482 lived outside the city limits. They were transported by buses owned and operated by the county board and were charged no fee.

A 4-mill tax is collected countywide, including property within the city limits of Jasper and Carbon Hill. The total collected in 1973 was $394,524, including $35,501 from property within the city limits of Jasper. Of the total, 73 percent went to the county board under a minimum per pupil school program. This would mean that of the $35,501 paid on property in Jasper, $25,-915 went to the county board.

## OPINION

The facts of this case clearly show a substantial interest of Jasper and Carbon Hill residents in the operation of the Walker County school system and do not show domination by such residents over county school board elections. Accordingly, appellants have not met their burden of demonstrating that the Alabama statutes and their application here are irrational or wholly irrelevant to the state's objective of electoral participation in the selection of county school board members. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Clark v. Town of Greenburgh,* 436 F.2d 770 (2d Cir. 1971); *Glisson v. Mayor & Councilmen of Savannah Beach,* 346 F.2d 135 (5th Cir. 1965); *Spahos v. Mayor & Councilmen of Savannah Beach,* 207 F.Supp. 688 (S.D.Ga.), *aff'd* 371 U.S. 206, 83 S.Ct. 304, 9 L.Ed.2d 269 (1962).

Moreover, appellants have failed to sustain their burden of showing that their proposed "fencing out" of Jasper and Car-bon Hill residents from voting in county board elections is required by a compelling state interest. *Evans v. Cornman,* 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); *Kramer v. Union School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Little Thunder v. State of South Dakota,* 518 F.2d 1253 (8th Cir. 1975). If, as appellants argue, the residents of Jasper and Carbon Hill had "no more interest in the affairs of the county school board than the residents of the next county," a compelling state interest in excluding them from voting would no doubt exist. As the Supreme Court said in *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506, 523 (1964), "the right of suffrage can be denied by . . . dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." However, the argument simply doesn't square with the facts in this case.

Appellants have called our attention to *Locklear v. North Carolina State Board of Elections,* 514 F.2d 1152 (4th Cir. 1975), in which it was held that extension of the franchise in county school board elections to residents of city school districts, and the consequent "dilution" of the vote of the noncity residents, was "over-inclusive" and constituted denial of equal protection of the laws. Justification for city residents' participation in the county school board elections was that the county board (1) administered the transportation system for the county as a whole, including the districts under the city school boards; (2) operated an Educational Resource Center for the benefit of all county and city pupils; and (3) administered a number of federally-funded projects. The Fourth Circuit held that the city voters' interest in these functions did not amount to a compelling state interest that city voters participate in the election of certain county school board members. It said:

We do not doubt that the fact that the county board performs some functions for the benefit of the city boards gives the electorate of the city boards an interest in the operation of the county board, jus-

tifying some voice and some control in how the joint functions are performed. However, it observed that the joint functions performed by the county school board were by *agreement* with the city school boards and not because of statutory mandate; that contractual rights of supervision and control over the county school board's performance under an agreement enabled the city school boards to participate in the centralized functions to the extent of their interest, rendering *electoral* participation in the selection of county school board members by residents of the city school districts unnecessary.[3] The court pointed out that while members of the city school boards were elected exclusively by the voters residing within each city board district, seven of the eleven county school board members were elected by voters residing in both the city school board districts and the county board jurisdiction; only four were elected exclusively by voters residing in the county board jurisdiction. It was the "dilution" of the county board jurisdiction residents' voting power by residents of the city board districts in the election of the seven members of the county school board which the plaintiffs had attacked.

The factual differences between this case and *Locklear* are readily apparent. For example, the substantial investment by Jasper residents in the vocational school and in the county board building and the fact that half the Carbon Hill school system's pupils come from outside Carbon Hill and pay no fee have no parallel in *Locklear*. Nor in *Locklear* does it appear that there was any net outflow of property tax funds from a city to the county. We are persuaded that to require such matters to be left to agreement between the city school boards and the county school board rather than to a rational and relevant plan established by the Alabama legislature, particularly when there is no evidence of invidious discrimination which might arise from domination of elections by Jasper and Carbon Hill voters,

would be to unnecessarily intrude upon an area reserved to the singular capability and responsibility of the legislature.

The judgment is affirmed.

---

**3.** The court determined that the extension of the franchise in county school board elections to residents of city school districts was "over-inclusive" for another reason, namely: the county school board administered the schools in its own jurisdiction, and there was "no cooperative effort between the county and city boards in this area."