**William Henry HOGENCAMP, et al., Plaintiffs-Appellants,**

v.

**LEE COUNTY BOARD OF EDUCATION OF LEE COUNTY, et al., Defendants-Appellees.**

No. 82–7365.

United States Court of Appeals, Eleventh Circuit.

Jan. 13, 1984.

Ronald G. Davenport, Phenix City, Ala., for plaintiffs-appellants.

Phillip E. Adams, Jr., Opelika, Ala., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY and SMITH *, Circuit Judges.

GODBOLD, Chief Judge:

This class action concerns the validity of an Alabama statutory scheme that permits residents of cities served by independent school boards to vote in elections for members of the county school board for the county in which the cities are located. The district court found that the statutory scheme as applied to Lee County, Alabama, did not violate the equal protection clause of the United States Constitution because the residents of cities in the county having independent school boards had a substantial interest in the operation of the county school system. We reverse.

Plaintiffs sought a declaratory judgment that no resident of a city within Lee County

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

that has an independent school system be allowed to vote for the county school board and that Ala.Code Sec. 16–8–1 (1975) as applied be declared void and that the 1976[1] and 1980 primary and general elections be voided and new elections ordered to fill the vacancies created.

Section 16–8–1 provides that "[t]he county board of education shall be composed of five members, who shall be elected by the qualified electors of the county." Section 16–13–199 permits any city with a population of 5000 or more to establish an independent school system. When plaintiffs brought this lawsuit the statutory scheme did not consider the effect of an independent city school system on the rights of city residents to vote for the county school board.

■ On June 21, 1983, before this case was argued, the Alabama legislature, presumably recognizing the doubtful validity of the statutory scheme, adopted HB 507 which prohibited residents of cities with their own independent school systems from voting in elections for Lee County Board of Education. This new statute does not moot the case, however, since the right of persons now in office to hold office is involved.

Lee County contains three cities of 5000 or more that have independent school boards—Auburn, Opelika, and Phenix City. Phenix City is primarily located in Russell County, but a small portion of the city lies in Lee County. Between 50 and 100 Phenix City students attend Lee County schools. At the time of this lawsuit city votes had decided three of the last five elections for county school board. Plaintiffs are class representatives of those who live in Lee County outside any of these cities. They assert that Sec. 16–8–1 as applied violates the equal protection clause because their votes are diluted by the votes of city residents who have no substantial interest in the county school system. The district court, in a non-jury trial, determined that city residents did have a substantial interest

in the operation of the county school system and therefore found the statute as applied did not violate the equal protection clause.

The Fifth Circuit has twice considered the constitutionality of city residents who have their own school system voting for the county board. *Phillips v. Andress,* 634 F.2d 947 (5th Cir.1981) (Unit B); *Creel v. Freeman,* 531 F.2d 286 (5th Cir.), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1976). These cases indicate that the issue is whether the city residents have a "substantial interest" in the operation of the county school system, as otherwise the state would have a. compelling state interest in excluding the city residents from voting. *Phillips,* 634 F.2d at 950; *Creel,* 531 F.2d at 288. These cases also suggest the factors relevant to a determination of substantial interest.

*Creel* involved three school systems (Carbon Hill, Jasper, and Walker County) that were closely linked. A special statute governed the election of the Walker County school board. 531 F.2d at 287 n. 1. The Jasper school board had purchased property for $100,000 which it leased to the county school board for $1/year. *Id.* The Jasper board had also contributed $212,500 for the construction of a vocational school operated by the county for which Jasper had to pay $50/pupil/year for its students who attended. *Id.* at 287–88. The schools themselves were substantially mixed—Walker High had 488 students from the county and 462 from the city, while the Carbon Hill system had 482 from the county and 483 from the city. *Id.* at 288. The county board transported some of the county students to Walker High and the Carbon Hill schools. *Id.* Focusing on the special statute, the shared property, the mix of students, and the flow of money, the court concluded that the residents of Jasper and Carbon Hill did have a substantial interest in the operation of the Walker County school system. *Id.*

In contrast to *Creel,* the court in *Phillips* found no substantial interest by the city

---

1. Because the terms of board members elected in 1976 have expired, the request for relief concerning these board members is now moot.

Issues concerning board members elected in 1980 remain, however.

residents where the only significant tie was an insubstantial amount of money. While there were a few crossovers, there was no substantial mix of city and county students in any school. 634 F.2d at 950. There was no shared property. *See id.* While approximately $90,000 flowed from the city of Tuscaloosa to Tuscaloosa County from the property tax, the court noted that this amount constituted less than 1% of the county budget. *Id.* at 951. The county sales tax was split between the city and county boards 40%–40%, with the remaining 20% going to the county hospital. The district court had concluded that some amount of money flowed from the city to the county via the sales tax, as it inferred that the majority of sales occurred in the city. While accepting this inference, the appellate court recognized that some city sales were made to county residents. The court concluded that the degree of financial support from the sales tax was insufficient to create a substantial interest in the city residents. *Id.*

In this case the district court considered the factors identified as relevant by *Creel* and *Phillips.* The court determined that the city and county schools are financially and administratively independent of each other. It also found some crossovers, consisting of 50–100 students from Phenix City attending county schools and a few from an area annexed by Opelika several years ago who were allowed to remain in the county schools if they had started there. The court then considered the tangled issue of the source of local funding for the schools. Without expressly finding the figure as a fact, the district judge accepted the defendants' expert's conclusion that city residents provided 2.74% of the county board's budget. The court concluded that this percentage was sufficient to create a substantial interest in the city residents.

The court also addressed an argument presumably not raised in the prior cases that the nature of the Alabama Special Education Trust Fund provided city residents with a substantial interest in the operation of county schools. The Special Education Trust Fund is the major source of funding for public schools. It consists of money from a variety of state taxes, the primary ones being income tax, sales tax, utility tax, and use tax. It is not possible to trace respective payments of sales and income taxes by city and county residents. Furthermore, because of the complex formula used to determine how much money will be paid to each school system, a school system—city or county—may receive more money than taxes paid by residents of that county. The district court applied the deferential standard used in equal protection analysis when no suspect class or fundamental interest is involved and concluded that the Special Education Trust Fund by itself "might" provide a rational basis for Alabama's statutory scheme permitting city residents who have their own school system to vote for the county school board.

■ For purposes of decision we treat the district court's acceptance of the 2.74% figure, and its statement that the existence of the Special Education Trust Fund "might" provide a rational basis, as findings and conclusions, though they were not stated to be such. These two factors neither separately nor together constitute a substantial interest in the city residents. Existence of the Special Education Trust Fund is unpersuasive. If its existence creates a substantial interest any Alabama resident has an interest in the operation of all school systems in the state primarily funded by the Special Education Trust Fund. Moreover, no funds originating in Lee County were traced to the Special Education Trust Fund and through it back to the school systems, and indeed it appears they cannot be traced. This leaves the 2.74% of the county system's budget that the expert testified was contributed by city residents. This is insufficient by itself to create a substantial interest in the city residents. We therefore reverse.

Plaintiffs are entitled to a declaration that any members of the county board chosen in the 1980 primary and general elections hold office illegally. It is necessary that the district court direct that elections

be held promptly, with any members elected in 1980 holding office de facto in the interim.

REVERSED.