**Chris HOSFORD' and Sheila Jones, Plaintiffs,**

v.

**Melvin RAY, Superintendent of Education Madison County Public Schools; and the Madison County Election Commission, Defendants,**

**the Honorable Mike Moore, Attorney General for the State of Mississippi, Intervenor.**

**Civ. A. No. J91–0480(W).**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 31, 1992.

J. Stephen Wright, Jackson, Miss., for plaintiffs.

John W. Christopher, Ridgeland, Miss., Jerry R. Wallace, Canton, Miss., Gail Low-ery, Atty. General's Office, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER INCORPORATING FINDINGS OF FACT AND CONCLUSIONS OF LAW

WINGATE, District Judge.

Before the court is the plaintiffs' motion for summary judgment filed pursuant to Rule 56, Federal Rules of Civil Procedure.[1] In this action filed under 42 U.S.C. § 1983,[2] plaintiffs Chris Hosford and Sheila Jones, electors of Madison County, Mississippi, decry as unconstitutional the present scheme of electing the Madison County Superintendent of Education on the grounds that electors residing in the City of Canton, Mississippi, which has its own municipal separate school district, also are allowed to vote for that office. Plaintiffs thus urge the court to declare that the current application of Miss.Code Ann. § 37–5–71 (1972),[3] which empowers Canton voters to vote in the above county election, as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[4] because this circumstance

1. Rule 56(a), Federal Rules of Civil Procedure, states as follows:

    **(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

2. Title 42 U.S.C. § 1983 provides in pertinent part as follows:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Section 37–5–71(1) provides:

    (1) The county superintendents of education shall be elected in the manner prescribed by the provisions of this chapter, un-less such office be made appointive as provided in this chapter, in which case the county superintendent shall be appointed by the county board of education or by the trustees of the separate school district embracing an entire county with a population of fifteen thousand (15,000) or less, as provided in subsection (2) of Section 37–7–203. In all cases he shall have such qualifications as prescribed by Section 37–9–13 and receive such compensation as prescribed by Section 37–9–36, if he is elected, or an amount as established under Section 37–9–37, if he is appointed.

4. The Fourteenth Amendment to the United States Constitution provides:

    Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

improperly and unconstitutionally dilutes the votes of the county electors.

Persuaded that there are no genuine issues of disputed facts here and persuaded that under the law plaintiffs are entitled to the relief sought, the court hereby grants summary judgment to the plaintiffs for the reasons which follow.

## THE PARTIES

Plaintiffs are two electors of Madison County, Mississippi, who reside outside the City of Canton, Mississippi.

Defendant Melvin Ray, sued in his official capacity only, is the superintendent of education for Madison County, Mississippi. Elected to that position in November 1987, he remains in that post by order of this court until the election issues raised by this matter are resolved and a general election for the superintendent's post is subsequently held.

Also named as a defendant is the Madison County Election Commission, charged by state law with administering the Mississippi Election Code in Madison County and with supervising that county's general and special elections pursuant to Miss.Code Ann. §§ 23-15-1 *et seq.,* 23-15-211(1) (Rev. 1990).

The Mississippi Attorney General, the Honorable Mike Moore, on behalf of the State of Mississippi, by order of this court has been permitted to intervene in order to offer the State's perspectives on the constitutionality of the challenged state statute and to offer any defense deemed warranted.

## THE INJUNCTION

In order to maintain the status quo until this matter could be heard, on October 29, 1991, this court granted plaintiffs an injunction which halted the scheduled election of the Madison County Superintendent. The Order stated that:

"... this Court shall, after a hearing of this cause on its merits, enter a Final Judgment which shall provide for the holding of a special election to elect the Madison County Superintendent of Edu-

cation at such date and under such terms and conditions as the Court shall deem proper in the premises.

IT IS FURTHER ORDERED that the Defendant, Melvin Ray, Madison County Superintendent of Education shall, at the end of his present term, continue to serve and to hold office as *de facto* Superintendent of Education of Madison County, Mississippi until a special election shall be ordered by this Court after a hearing of this cause on the merits."

Order Granting Preliminary Injunction, October 29, 1992, p. 2.

Primary elections by the Democratic and Republican parties were not enjoined. Since each party had only one candidate running unopposed for its nomination, the two parties now have conducted their primary elections and certified their respective candidates for county superintendent of education. The deadline for qualifying as an independent candidate for Madison County Superintendent of Education ran September 6, 1991, prior to the issuance of the court's injunction. No independent candidates qualified before that deadline. Hence, as it now stands, the Democratic and Republican nominees are the sole contestants for the office.

## FINDINGS OF FACTS

Following the court's issuance of an injunction, plaintiffs later moved for summary judgment. In due time the defendants responded. Concerned that the Attorney General for the State of Mississippi might desire a say on the constitutionality of the attacked state statute, this court offered to him the opportunity to intervene. The Attorney General, the Honorable Mike Moore, accepted the invitation and entered into the briefing schedule. The parties have now all responded and relative to plaintiffs' motion for summary judgment agree as to the following facts:

According to the 1990 decennial census, 16,477 residents, or 30.63% of the total Madison County population, resided within the Canton Municipal Separate School District.

Pursuant to Miss.Code Ann. § 37–5–71 (1972), electors residing within the Canton Municipal Separate School District cast ballots for the Madison County Superintendent of Education in the 1987 election, even though the Canton Municipal Separate School District maintained a separate public school system, administered by a superintendent of education chosen for that specific purpose. The superintendent of education for the Madison County public schools played no role in 1987 in the administration of the Canton Municipal Separate School District and plays no role today in the administration of that school system.

Similarly, neither the Board of Education for the Canton Municipal Separate School District nor the Superintendent of Education for the Canton Municipal Separate School District has any role in the administration of the Madison County public school system. The Madison County public school system is administered solely by the Madison County School Board and the Madison County Superintendent of Education, Defendant Melvin Ray.

Even though voters residing in the Canton Municipal Separate School District under the current procedure vote for the Madison County Superintendent of Education, the executive arm of the Madison County School District, these voters do not vote for the Madison County School Board Members, the legislative/judicial arm of the Madison County School District. Neither do voters residing in the Canton Municipal Separate School District vote for school bond issues proposed by the Madison County School District.

Defendant Melvin Ray was elected superintendent of the Madison County schools in 1987 when he won the democratic primary election and faced no Republican Party opposition. A total of 11,252 votes were cast in that 1987 Democratic Primary Election. Defendant Ray received 7,534 votes, 67% of the total, and his opposition, Dr. John C. Williams, received 3,718 votes, 33% of the total. Of the 11,252 total votes cast, 4,137 votes, plus or minus 14 votes, or 37% of the total vote, were cast by electors residing in the Canton Municipal Separate School District. Of those 4,137 votes cast by voters residing in the Canton Municipal Separate School District, 3,222, or 78% of the total, were cast for defendant Ray. Of the 4,137 votes cast by electors residing in the Canton Municipal Separate School District, 915, or 22% of the total, voted for Dr. John Williams, defendant Ray's opposition. Defendant Ray is a resident of the Canton Municipal Separate School District, as was his opposition in 1987, Dr. John Williams.

During the 1987–1988 scholastic year, when defendant Ray was elected superintendent of the Madison County schools, 4,605 students attended the Madison County schools. Only one of those students resided in the Canton Municipal Separate School District while attending the Madison County public schools. That one student, Gerald Scott, was the son of a teacher, who resided in Canton but was employed by the county schools.

During the 1987–88 scholastic year, no students resided in the Madison County School District while attending public schools in the Canton Municipal Separate School District.

During the 1990–1991 scholastic year, total enrollment in the Madison County public schools was 5,168. Eight of those students resided in the Canton Municipal Separate School District while they attended Madison County public schools. Those eight students were: Kevin Nichols, Nicole Nichols, Christopher Thomas, Jeffrey Thomas, Amanda Irwin, Ashley Irwin, Robert Irwin, and Joseph Chandler. All of those eight students were/are children of teachers employed by the Madison County public schools, who lived within the Canton Municipal Separate School District.

During the 1987–88 scholastic year, no students resided in the Madison County School District while attending or participating in special education programs operated by the Canton Municipal Separate School District. During the 1987–88 scholastic year, one student resided in the Canton Municipal Separate School District while participating in or attending special education programs operated by the Madison County school system.

During the 1990–91 scholastic year, one student resided in the Madison County School District while attending or participating in special education programs operated by the Canton Municipal Separate School District. During the 1990–91 scholastic year, no students resided in the Canton Municipal Separate School District while attending or participating in special education programs operated by the Madison County School system.

During the 1987–88 scholastic year, no students resided in the Madison County School District while attending or participating in vocational technical training provided by the Canton Municipal Separate School District. During the 1987–88 scholastic year, no students resided in the Canton Municipal Separate School District while attending or participating in vocational technical training sponsored by the Madison County School District.

During the 1990–91 scholastic year, no students resided in the Madison County School District while attending or participating in vocational technical training provided by the Canton Municipal Separate School District. During the 1990–91 scholastic year, no students resided in the Canton Municipal Separate School District while attending or participating in vocational technical training sponsored by the Madison County School District.

During the 1987–88 scholastic year, one Madison County School District bus and one Madison County School District bus driver, employed by the Madison County School District, transported the one student who resided in the Canton Separate School District but participated in special education classes offered by the Madison County School District. No other Madison County buses or Madison County School District bus drivers during the 1987–88 scholastic year transported students who resided in the Canton Separate School District for school activities or classes offered by the Madison County School District.

During the 1987–88 scholastic year, no Canton Municipal Separate School District buses or bus drivers transported any stu-dents residing in the Madison County School District.

During the 1990–91 scholastic year, one Madison County School District bus and one Madison County School District bus driver, while employed by the Madison County School District, transported students who. resided in the Canton Municipal Separate School District to classes or for school activities at the Madison County School District.

During the 1990–91 scholastic year, no school bus driver or school buses owned or employed by the Canton Municipal Separate School District provided transportation to students residing in the Madison County School District.

During the 1987–88 scholastic year, the total budget for the Madison County School District was $14,434,770. These funds came from local, state, and federal sources. None of the funds, however, emanated from taxes on sales occurring, or property being found, in the geographic confines of the Canton Municipal Separate School District. Similarly, during that same scholastic year, 1987–88, none of the funds comprising the budget of the Canton Municipal Separate School District emanated from taxes on sales made, or property being found, in the Madison County School District.

During the 1990–91 scholastic year, the budget for the Madison County School District was $46,798,423. Those funds emanated from local, state, and federal sources. None of the funds, however, resulted from sales occurring, or property being found, in the geographic confines of the Canton Municipal Separate School District. Similarly, for that same scholastic year, 1990–91, none of the funds comprising the Canton Municipal Separate School District budget emanated from taxes on sales occurring, or property being found, in the Madison County School District.

The only funds shared by the two districts, the Madison County School District and the Canton Municipal Separate School District, are those funds derived from leases on sixteenth section lands which are partly located in one district and partly

within the other. The proceeds of leases on those sixteenth section lands are split between the two districts on a pro-rata basis. Each district receives that proportion of the annual lease proceeds represented by its proportionate number of educable children residing both within that district's geographic boundaries and within the sixteenth section. The administrative offices of the Madison County School District are located in the City of Canton, within the Canton Municipal Separate School District, but were not located within that separate school district when they were constructed. The Madison County School District's administrative offices were constructed with monies of the Madison County School District, and no funds of the Canton Municipal Separate School District were used to construct or maintain the administrative offices of the Madison County School District.

## CONCLUSIONS OF LAW

Mississippi's statutory scheme generally allows all resident electors of Mississippi counties to vote for the county superintendent of education, even though a county may have one or more municipal separate school districts within its boundaries which operate independently of, and to the exclusion of, the county school district. *See* Miss.Code Ann. §§ 37–5–61(4),[5] 37–5–71 [6] (1972). Nevertheless, in spite of this general statutory rule, § 37–5–71(2) [7], (3),[8] (4),[9] (5),[10] (6) [11] (1972), creates exceptions for twenty-eight (28) counties which exclude city voters as electors for county Superintendents of Education. Madison County,

**5.** Section 37–5–61(4) provides as follows:

(4) Said superintendent shall be elected at the same time and in the same manner as other county officers are elected and shall hold office for a term of four years.

**6.** See footnote 3.

**7.** Section 37–5–71(2) provides that in particularly described counties all qualified electors residing within any municipal separate or special municipal separate school district shall not vote in the election for the county superintendent of education. These particularized counties do not include the City of Canton, Mississippi.

**8.** Section 37–5–71(3) similarly describes certain counties (excluding Madison County where the City of Canton, Mississippi, is located) and states that the qualified electors residing within those municipal separate school districts shall not participate in the election of county superintendent of education.

**9.** Section 37–5–71(4) provides as follows:

(4) The county superintendent of education, with the approval of the county board of education by its first having adopted a resolution of approval and spread upon its minutes, shall be elected from the county at large, exclusive of the municipal separate school district boundaries:
(a) In any county bordering on the State of Tennessee having a land area of seven hundred ten (710) square miles, wherein is located part of a national forest, and wherein United States Highway 78 and Mississippi Highway 7 intersect;
(b) In any Class 4 county wherein is located the state's oldest state supported university, in

which Mississippi Highways 6 and 7 intersect; and
(c) In any county having a population in excess of seventeen thousand (17,000) and less than eighteen thousand (18,000), according to the 1970 federal decennial census, wherein Mississippi Highways 6 and 9 intersect.
(The counties above described do not include the City of Canton, Mississippi).

**10.** Section 37–5–71(5) provides as follows:

(5) In any county having a municipality of between forty-nine thousand (49,000) and fifty thousand (50,000) population according to the 1960 federal census, and adjoining the Alabama line, wherein U.S. Highways 80 and 45 intersect, the qualified electors residing within any municipal separate school district shall not participate in the election of the county superintendent of education, and such county superintendent of education shall not be a resident of a municipal separate school district.
(The county described does not include the City of Canton, Mississippi).

**11.** Section 37–5–71(6) provides as follows:

(6) In any county traversed by the Natchez Trace Parkway wherein U.S. Highway 45 and Mississippi Highway 4 intersect and having a population of seventeen thousand nine hundred forty nine (17,949) according to the 1960 federal census the qualified electors residing within any municipal separate school district shall not participate in the election of the county superintendent of education, and such county superintendent of education shall not be a resident of a municipal separate school district.
(The county described does not include the City of Canton, Mississippi).

Mississippi, is not one of those counties which, by specific exclusion to the statutory rule, disallows the electors residing in the Canton Separate School District from voting for the Madison County Superintendent of Education.

By contrast, Miss.Code Ann. § 37–5–3 [12] (1991) specifically excludes electors residing in a municipal separate school district, such as the Canton Municipal Separate School District, from participating in the election of members of the county boards of education.

■ Settled case law teaches that electors residing in a municipal separate school district may cast their vote for a county office, such as a county superintendent of education, or for the county board of education, if the resident municipal electors have a substantial interest in the operation of the county school district. This lynchpin of a "substantial interest" is vital. Where no substantial interest exists, a practice of allowing municipal separate school district electors to vote for the county superintendent of education: (a) dilutes the vote of those residents who reside within the county, but outside the municipal separate school district; (b) creates an irrational situation, wholly irrelevant to the state's objective of electoral participation in the selection of elected offices; (c) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (d) provides the state a compelling interest to exclude the residents of the municipal separate school district from voting for the educational system's administrators. *See Phillips v. Andress,* 634 F.2d 947 (5th Cir.1981) (County electors challenged Alabama statute permitting city residents to vote for county school board members. Court of Appeals found no substantial interest in city residents entitling

them to vote for county board members.); *Creel v. Freeman,* 531 F.2d 286 (5th Cir. 1976) (County residents challenged Alabama statute permitting city residents to vote for county school board members. Court of Appeals found no substantial interest in city residents entitling them to vote for county board members.). *See also Davis v. Linville,* 864 F.2d 127 (11th Cir. 1989) (County electors challenged Alabama statute permitting city residents to vote for county school board members. Court of Appeals held that permitting city residents to vote in county school board elections did not violate equal protection.); *Sutton v. Escambia County Board of Education,* 809 F.2d 770 (11th Cir.1987) (County residents challenged application of Alabama statute permitting residents of city served by independent school boards to vote in county board elections. Court of Appeals held that city residents had a substantial interest in the operation of the county school systems and could vote in county board elections, as they had not dominated those elections.); *Hogencamp v. Lee County Board of Education,* 722 F.2d 720 (11th Cir.1984) (Class action challenged Alabama statutory scheme permitting residents of cities served by independent school boards to vote in county school board elections. Court of Appeals held that neither existence of special education trust nor contribution of 2.74% of county's budget created a substantial interest in city residents entitling them to vote for county board members).

■ Of course, the parties seeking to exclude city residents from voting in the county election at issue have the burden of demonstrating that the resident municipal electors do not have a substantial interest in the operation of the county school district. *Sutton v. Escambia County Board of Education,* 809 F.2d 770 (11th Cir.1987).

---

12. Miss.Code Ann. § 37–5–3 provides:

No person who is a resident of the territory embraced within a municipal separate school district or a special municipal school district shall be eligible to be a member of the county board of education. Qualified electors residing within a municipal school district or a special municipal separate school district shall not be eligible to vote or participate in the election of members of the county board of education.

The provisions of this section shall be applicable in the case of a special municipal separate school district and a line consolidated school district of which another county is the home county which together occupy all of the territory of a supervisor's district of the county.

■ The above five juridical guideposts, which direct the court's action here, identify several factors which the court should consider in determining whether electors in the municipal separate school district have a substantial interest in the administration of the county school district: namely, general student crossover impact; special programs student crossover effect, e.g., in special education programs and vocational technical training; and financial interrelationship. Each will be discussed in turn.

■ Student crossover, that is, the number of students who reside in one district while attending a school system in another district whether for the year defendant Ray was elected, 1987–88, or for the most recently concluded year, 1990–91, is virtually non-existent in this case. In 1987–88 only one student residing in the Canton Municipal Separate School District attended Madison County Schools, even though total enrollment for Madison County Schools was 4,605 students. Indeed, that single student, Gerald Scott, was the child of a teacher employed by the Madison County School District but who lived in the Canton Municipal Separate School District. That same year, no students residing in the Madison County School District attended the Canton Municipal Separate School District. For the most recently concluded scholastic year, 1990–91, total enrollment of the Madison County public schools was 5,168, only eight of whom resided in the Canton Municipal Separate School District, and all eight of those were children of teachers employed by the Madison County School District, but who lived in the Canton Municipal Separate School District.

The crossover figures in this case clearly reflect that the Canton electors have a negligible interest in the Madison County School District and its administration. Indeed, the figures in the instant case show less student crossover than any of the five reported decisions which guide this court's analysis. In *Davis v. Linville*, the Court described the county and city systems as having "considerable student crossover" and "virtually an open door policy." *Davis*, 864 F.2d at 129. In that case 189 and 177 city students attended county schools in the two years reviewed by the Court, while 120 county residents attended city schools. *Id.* In *Sutton*, the county and city boards of education likewise had "an open-door policy to students." *Sutton*, 809 F.2d at 773. Of those attending the city schools in *Sutton*, 330 were residents of the county. *Id.* In *Hogencamp*, between 50 and 100 students residing in the city attended the county schools. *Hogencamp*, 722 F.2d at 722. In *Phillips*, court-ordered desegregation plans had kept crossovers in check, but there had been a "few 'crossovers' where there had been discipline problems." *Phillips*, 634 F.2d at 950. Finally, *Creel* involved one county with two cities within the county, each having separate school districts. One high school within one of the city districts had an enrollment of 950 students, 488 of which lived outside the city and 257 of which were "transported to the school by the county board." *Creel*, 531 F.2d at 288. The second city's separate school system "had 965 students of which 482 lived outside the city limits." *Id.* Obviously, crossover figures in the general student population in Madison County, Mississippi, are negligible by comparison.

A second factor identified by the Fifth and Eleventh Circuits is related to, but slightly different than, crossover in the general student population, namely, crossover in the special programs of special education and vocational technical training. In the instant case, this factor is also insubstantial and too impotent to bestow upon the Canton electors a substantial interest in the Madison County School District.

Crossover in the special education programs has been *de minimis*. During the 1987–88 scholastic year, one student residing in the Canton Municipal Separate School District participated in or attended special education programs operated by the Madison County school system. During the 1990–91 scholastic year, conversely, one student residing in Madison County public school District participated in special education programs operated by the Canton Municipal Separate School District. During the same time, 1990–91, no students

residing in the Canton District participated in special education programs operated by the Madison County school system. *Compare Davis v. Linville*, 864 F.2d at 130 ("several county students" attended a school for the handicapped operated by the city system) *with Sutton v. Escambia County Board of Education*, 809 F.2d at 774, 777 (the two systems worked together to provide one program for the multi-handicapped and another for the trainable mentally retarded, with the county maintaining one school and the city maintaining the other, involving five or six students in each school) *and Phillips v. Andress*, 634 F.2d at 950 (the county system operated a regional school for the multi-handicapped, drawing students from four or five counties, and five to fifteen students residing in the city of Tuscaloosa, Alabama, attended this county school).

Crossover in the vocational technical training area is nonexistent. Neither in 1987–88 nor in 1990–91 have any students residing in the county district attended vocational technical training programs sponsored by the Canton Municipal Separate School District, and neither have students residing in the Canton District attended vocational technical training programs provided by the county. There is absolutely no crossover in the vo-tech area. *Compare Davis v. Linville*, 864 F.2d at 129–30 (both county and city systems maintained their own vocational schools, but some county students nevertheless attended the city's vocational program and the county paid fees to the city for that purpose) *with Sutton v. Escambia County Board of Education*, 809 F.2d at 773, 778 (by joint venture agreement, the city and county shared a vocational center, with an annual average of 83 city residents attending classes at that vo-tech center "representing about 43% of the total enrollment at the center") *and Phillips v. Andress*, 634 F.2d at 950 (each system maintained its own vocational schools, but the county transported four students to the city vocational school and "a few city students would occasionally come to the county vocational school to obtain classes not offered by the city school") *and Creel v. Freeman*, 531 F.2d at 287–88 (the city board had contributed $212,500 to construct a vocational school to be operated by the county to which the city sent students and paid annual fees for their attendance).

One factor to which our juridical polestars attach much significance is the interrelationship, if any, of the financing mechanisms of the two districts, that is, whether tax monies generated from within the separate municipal school district are a significant portion of the funds supporting the county district. *Davis v. Linville*, 864 F.2d at 130 (54% of the county population lived outside the city, but the county board of education received 62% of the county-wide sales tax revenues and 75% of county-wide tobacco tax revenues, and, although only 49% of the county's assessed property value was outside the city limits, the county board of education received 62% of that portion of the county-wide ad valorem property taxes that were earmarked for education); *Sutton v. Escambia County Board of Education*, 809 F.2d at 779–82 (J. Clark dissenting) (direct subsidies from the city to the county amounted to no more than 3% of the county budget, and relative tax flow from the city to the county was negligible at best and possibly a negative figure, that is, net tax flow may have been from the county to the city); *Hogencamp v. Lee County Board of Education*, 722 F.2d at 722 (the district court accepted expert testimony that city residents provided 2.74% of the county board of education's budget, a figure which the court of appeals found insufficient to create a substantial interest in the city residents); *Phillips v. Andress*, 634 F.2d at 950–51 (net flow of $90,000 in ad valorem property tax revenues from city to the county found insufficient to give city voters a substantial interest in the operation of the county system and insufficient to justify the inclusion of city voters in the election of the county system's administrators); *Creel v. Freeman*, 531 F.2d at 288 (approximately $26,000 of $35,000 paid in ad valorem taxes for property in Jasper, Alabama, was directed to the county board of education).

The facts *sub judice* do not show any financial interlock between the city and county school systems here which would support a finding that the electors of Canton have a substantial interest in the Madison County School District. None of the funds comprising the budget of the Madison County School District emanates from taxes for sales occurring, or property being found, in the geographic confines of the Canton Municipal Separate School District. This factor distinguishes the instant case from all those previously decided by the Fifth and Eleventh Circuit Courts of Appeals.

Indeed, even the insubstantial funds received from leasing sixteenth section lands are apportioned strictly so as to reflect no relationship between the two districts. Lease proceeds from those sixteenth section lands which are found along the boundaries of the two districts are apportioned according to the number of educable children from each school district residing within the lands comprising the sixteenth sections. Each district then receives the precise proportion of the lease proceeds which corresponds to the number of that district's educable children residing within the section. *See* Miss.Code Ann. § 29-3-119 [13] (Rev.1990).

The *Davis* case makes passing reference to county bus drivers and bus aids "fulfill[ing] certain functions in the city system," indicating that such a phenomenon may tend to show a relationship between the two districts and thus some interest of the city electors in the county system. *Davis v. Linville,* 864 F.2d at 130. None of the other four precedents seemed to place any emphasis upon this factor. Regardless, in the instant situation, the involvement of Madison County School District buses and bus drivers in transporting Canton residents is insignificant. During 1987–88, one county bus transported the one special education student who resided in the Canton Separate School District. During that year Madison County buses did not transport the one rank-and-file student who lived in Canton but attended Madison County schools. Similarly, no city buses or bus drivers in 1987–88 transported any students who resided within the Madison County School District.

The situation was comparable in 1990–91. One Madison County bus and bus driver transported students residing in the city to classes in the county. Since only eight such students (each of which was the child of a Madison County teacher) fell into that category and assuming all of them rode the bus to school, at most only eight children were so transported. During that year, as with 1987–88, no city buses or drivers transported students residing in the county district.

Still another factor identified by the precedents which guide this court's decision is the impact upon the election process caused by city voters casting ballots for county educational administrative offices which do not administer their separate school district. Defendant Melvin Ray was elected superintendent in the 1987 democratic primary election in which 11,252 votes were cast. Of those total votes cast, 37%, or 4,137 votes, were cast by electors residing in the Canton Municipal Separate School District.[14] Moreover, while the incumbent defendant would have been elected even if Canton voters had been excluded, he garnered a resounding majority, 3,222 votes or 78% of the total, from those voters who resided in Canton and voted for the county superintendent of education. This 78% majority of the votes cast from Canton significantly exceeded the percentage of votes received by defendant Ray in the county as a whole. Defendant Ray received 67% of the total county vote. In addition, defendant Ray resides in the City of Canton.

This comparison of the vote from the City of Canton with the vote from the county as a whole argues in favor of excluding the Canton voters under the equal protection analysis which this court must

---

**13.** This statute deals with the division of funds among school districts.

**14.** Parenthetically, while city residents cast 37% of the votes cast in the 1987 election, the 1990 census reflect that only 30.63% of the county population resided in the city in 1990.

here apply. *See Davis v. Linville,* 864 F.2d at 129; *Sutton v. Escambia County Board of Education,* 809 F.2d at 773, 774, 782–83 (only 17% of the population of the county resided in the city, no resident of the city had served on the county administrative office since 1962, and city residents had accounted for no more than 26% of the votes cast in a single election); *Hogencamp v. Lee County Board of Education,* 722 F.2d at 721 (city votes had decided three of the last five elections for the county school board); *Creel v. Freeman,* 531 F.2d at 287 (no incumbent lived in either of two cities, although in a county wide election for school board chairman, 4,161 of 13,500 votes came from city electors).

A number of other factors underscore the irrationality of allowing Canton voters to help elect the Madison County Superintendent of Education. Among other things, the situation creates the anomaly of Canton voters helping to elect the executive arm of the Madison County School District while they are specifically excluded from voting for Madison County School Board members, the legislative/judicial arm of the district. *Compare* Miss.Code Ann. § 37–5–3 [15] (1991) *with* § 37–5–71 [16] (1972). This defies logic. One cannot rationalize why the executive arm of the county school administration should be elected by the Canton voters, who have no interest in the district, while the legislative and judicial arms of that same educational agency should be elected without the participation of the Canton voters.

It is also anomalous that Canton voters may help elect the superintendent of education when they do not vote for county school bond issues, the principal device by which Mississippi voters improve the physical plant of their educational system. *See generally,* Miss.Code Ann. § 37–59–15 [17] (Rev.1990).

Finally, it is of no moment that the administrative offices of the Madison County School District are located in the City of Canton. Those offices were not built within the Canton Municipal Separate School District. The Canton District expanded after the Madison County offices were constructed. Moreover, the Madison County offices were constructed solely with county funds, and no funds of the Canton Municipal Separate District were used for that construction or subsequently for the upkeep of the structure. *Compare Creel v. Freeman,* 531 F.2d 286, 287 (5 Cir.1976) (county administrative offices located within the city limits of Jasper, which city had paid $100,000 for the purchase of the property on which the administrative offices sat).

## CONCLUSION

In short, there is simply no view of the instant facts which would endow residents of Canton with a substantial interest in the operation of the Madison County School District. Indeed, residents of Canton have "no more interest in the affairs of the county school board than the residents of the next county," *Phillips,* 634 F.2d at 950, *quoting Creel,* 531 F.2d at 288. Accordingly, this court is persuaded under these circumstances to declare that the current application of § 37–5–71 to Madison County, Mississippi, violates the Equal Protection Clause of the Fourteenth Amendment. The statute improperly dilutes the votes of those persons living within the county as these electors go about the process of electing their superintendent of education. The court grants declaratory judgment to plaintiffs and hereby enjoins voters residing in the Canton Municipal Separate School District from voting in subsequent elections

---

**15.** See footnote number 11.

**16.** See footnotes 3, 7, 8, 9, 10, and 11.

**17.** Section 37–59–15 provides as follows:

Such election shall be held upon order of the school board, as far as is practicable, in the same manner as other elections are held in such county or municipality. At such elec-

tion, all qualified electors of such school district may vote. The ballots used at such election shall have printed thereon a brief statement of the amount and the purpose of the proposed bond issue, and the words "FOR THE BOND ISSUE," and "AGAINST THE BOND ISSUE." The voter shall vote by placing a cross (X) or check mark (✓) opposite his choice on the proposition.

for the Madison County Superintendent of Education.

The only issue remaining, now, is to establish a date for the constitutional election of a superintendent of education for the Madison County Public Schools. Such a special election shall be held January 12, 1993. The candidates for that election shall be those previously qualified for the post, each political party's nominee having already been selected by primary and the independent candidates' qualifying deadline having expired September 6, 1991.

Absentee ballots for the special election shall be made available December 14, 1992, with absentee voting in the Circuit Clerk's office to begin December 14, 1992. The deadline for absentee ballot voting in the Circuit Clerk's office shall be 12:00 noon, January 9, 1993, the Saturday before election day. The deadline for mail-in absentee ballots shall be 5:00 p.m., January 11, 1993, the Monday before election day, by which time such ballots must be received in the Madison County Circuit Clerk's office, failing which they shall not be counted.

The Circuit Clerk of Madison County shall publish notice of this special election in both local county newspapers, the *Madison County Journal* and the *Madison County Herald.* That notice shall run for two weeks consecutively, appearing in the October 15, 1992, and the October 22, 1992, publications.

Except as the statute conflicts with this memorandum opinion and order, the special election shall be conducted in conformity with Miss.Code Ann. § 23–15–833 (Rev. 1990).

SO ORDERED.